THE STATE v. WITTEN, *Appellant.*

1. **Criminal Law** : RAPE : FAILURE TO MAKE COMPLAINT : INSTRUC-
TION. On a trial for rape where there was evidence that the
woman made no outcry at the time of the alleged offense, and no
complaint was made by her until she was discovered to be preg-
nant, and the first charge of force was made more than a year
after the alleged outrage, an instruction which told the jury they
should consider this evidence with all the other evidence, in
determining the guilt or innocence of the defendant, and whether
in fact a rape was committed or not, should have been given.

2. —— : —— : —— : ——. Such instruction does not under-
take to tell the jury what inference they should draw from the
testimony, and is not an invasion of their province as triers of fact.

3. —— : —— : SEPARATION OF JURY. Where, on a trial for rape,
a juror separated from his fellows and went into a room where
many persons were discussing the case on trial, and remained
there for a considerable length of time, it constituted such mis-
conduct as will demand a reversal of the judgment, although it
does not appear that he took any part in what was said. (R. S.
1879, sec. 1909.)

*Appeal from Grundy Circuit Court.*—HON. G. D.
BURGESS, Judge.

REVERSED AND REMANDED.

*R. A. De Bolt, George Hall* and *T. A. Witten* for
appellant.

(1) The defendant's ninth instruction is identical
with the instruction approved by this court in the case
of the *State v. Wilson,* 91 Mo. 410–412, and ought to
have been given. 3 Greenleaf on Ev., sec 212; Roscoe's
Crim. Ev. [7 Ed.] 879; 2 Starkie on Ev. [6 Ed.] side
page 700; Kelly's Crim. Law, sec. 508; 1 Whart. Crim.
Law [9 Ed.] sec. 565; Whart. Crim. Ev., sec. 273;
*Maillet v. People,* 3 Am. Crim. Rep. 379–382 and note
page 382, with citations; Whart. Crim. Law [7 Ed.] sec.

1149–1150. (2) The court erred in refusing to grant defendant a new trial on the ground of the separation of the jury. R. S., sec. 1909; *McLean v. State*, 8 Mo. 153; *State v. Collins*, 81 Mo. 652; *State v. Murray*, 91 Mo. 95.

*John M. Wood*, Attorney General, for the State.

(1) The ninth and tenth instructions asked for by defendant, and which were refused by the court, were embraced within instruction number 2 given on the part of the state, and number 5 given on the part of the defendant. By said instruction number 2, the jury are told that, if the prosecuting witness and defendant had sexual intercourse with each other after the time he is alleged to have assaulted and ravished her, the jury may take such facts into consideration in determining whether or not the prosecuting witness consented to the intercourse at the time of the alleged assault. By said instruction number 5, after enumerating certain things which the jury may take into consideration, they are told that they may "from all the other cirumstances appearing in the case determine which witnesses are the more worthy of credit, and to give credit accordingly." While it is competent to show that she made complaint after the alleged offense in corroboration of her testimony, the only effect of it is to weaken the effect of her evidence with the jury. 2 Bish. Crim. Proc., sec. 963. Under the above instructions the jury were left to consider that fact as one of the circumstances in determining the credibility of the testimony of the prosecuting witness. It is not the province of the court to select certain facts shown by the evidence and tell the jury how much or what or whether any weight shall be attached to them. *State v. Smith*, 53 Mo. 267. (2) The separation of the jury was not such as to warrant the granting of a new trial. There is no pretense that they were tampered with, and "the separation of a jury in a criminal case will not vitiate their verdict unless it further appears that they have been tampered

with or have been guilty of some improper conduct."
*State v. Bell*, 70 Mo. 633, and authorities cited; *State v. Collins*, 86 Mo. 245; *State v. Payton*, 90 Mo. 220.

BLACK, J.—The defendant was indicted, tried and convicted of rape in the Grundy circuit court in the month of March, 1887.

The prosecuting witness, Mattie Moore, had been a member of the family of John Witten, the father of defendant, Reece Witten, for five or six years before the outrage, which she says was committed after harvest, in 1885. She was then sixteen or seventeen and the defendant twenty-four or twenty-five years old. There were two second-story rooms in the house, one occupied by her as a bed room, and the other by defendant. The old folks left home on Friday and returned on the following Sunday, and the crime, it is claimed, was committed on Friday night. The prosecuting witness says: "Reece came to my door and said 'if you don't open the door I will burst it open,' I opened the door and he threw his arms around me. He took advantage of me. I told him to go away, and if he did not I would tell the old folks. He said 'If you do I will make it damned hot for you.' I cried and fought and he had his arms around my body. I resisted to the utmost, and did everything I could to get away from him, but could not. He had intercourse with me and then went back to his room." On cross-examination she said: "I don't know whether I struck him or not. I did not bite, kick or pinch him or call for help. He put his arms around me and put me on the bed. I tried to push him away with my hands, and then I reached up and got hold of the bed and tried to pull myself away from him."

Her evidence is to the further effect that there was no one at the Witten residence that night but herself and Reece; that the next morning she went a half-mile to a neighbor's and got a girl to stay with her; that after

doing up the work the next day she went back to the neighbor's house and stayed there that night; that she and defendant had intercourse on frequent occasions during a period of a year thereafter; that she did not think they had intercourse before that Friday night; that she never told anyone of what had happened until she left for her aunt's, which was in September, 1886, just before confinement.

The evidence of the defendant in his own behalf is an admission of improper relations with the girl for a period as far back as 1884, but a denial of the use of any force on any occasion. Other evidence introduced by him is that in March, 1885, he supposed the girl was in a family-way and confessed his conduct to his father; the alarm proved a false one. At that time Mrs. Witten accused the girl of misconduct with defendant; she at first denied the charge, but being told that Reece had confessed and that she would have to leave, she admitted the charge, and promised to refrain in the future. Mrs. Witten says she next learned of their renewed intimacy in July, 1886. The girl is reported to have said on several occasions, before and after the defendant's arrest, that they were equally to blame. The first assertion made by her that defendant used force was made to the prosecuting attorney, which was after the birth of the child.

The defendant's ninth refused instruction is as follows : " If the jury believe, from the evidence, that at the time the offense is alleged to have been committed, the prosecuting witness made no outcry and did not, as soon as an opportunity offered, complain of the offense to others, but concealed it for a considerable length of time thereafter, then the jury should take this circumstance into consideration with all the other evidence in determining the guilt or innocence of the defendant and whether, in fact, a rape was committed or not."

This instruction should have been given. A concealment of the injury for any considerable time after the woman has had an opportunity to complain, and a failure on her part to make any outcry, where the act is committed within the probable hearing of other persons, are circumstances which will justify a strong, but not conclusive, inference that the act was with her consent, and not by force. 1 Whart. on Crim. Law [9 Ed.] sec. 565; Roscoe's Crim. Ev. [7 Ed.] 879; 3 Greenl. Ev. 212; *State v. Wilson*, 91 Mo. 410. An outcry and resistance are important elements of evidence, and a want of these circumstances, where they may reasonably be expected, go far to disprove the charge of rape (*State v. Cunningham, ante,* p. 382); and a concealment of the injury, where there is an opportunity for early disclosure, may lead to a like inference. The evidence, as a whole, tends strongly to show that this is one of those cases, where there has been a mutual gratification of desires and passions, and that the notion of force, on the part of the man, and want of consent, on the part of the woman, is an afterthought. No disclosure was made by the woman until discovered to be pregnant, and the first charge of force was made more than a year after the alleged outrage. Under these circumstances the instruction should have been given. The judgment in the case of *State v. Wilson, supra,* was reversed, alone, because a like instruction was not given as it was asked, and we must either overrule that case or reverse the judgment in this one.

The inference to be drawn from the concealment of the alleged outrage is, of course, one of fact; and it may be said the jury should be left to make such inference from that and the other facts in the case as accords with their judgment. As a general rule, it is an usurpation of the functions of a jury for the judge to tell them what conclusion or presumption of fact they

should draw from one or more given facts (28 Mo. 498; 57 Mo. 138); but the refused instruction does not undertake to tell the jury what inference they should draw. They are only told to take the circumstances recited, if true, into consideration in determining the question of the guilt or innocence of the defendant. Such an instruction is in no sense an invasion of the province of the jury. It is the duty of the judge to aid the jury in coming to a correct conclusion, and there are many cases where it is proper and a due administration of the law demands the giving of such instructions. Thus it is held to be proper to tell the jury that the opinions of expert witnesses are not conclusive, but they are to be considered with other evidence. *Rose v. Spies*, 44 Mo. 20. So the jury may be told that the evidence of the defendant's good character may be considered with the other facts in determining the question of his guilt (*State v. Underwood*, 76 Mo. 635); and that flight of one charged with a crime is a circumstance tending to show guilt. *State v. Griffin*, 87 Mo. 608. The refused instruction is no more than a fair cautionary one, and should have been given.

The defendant's fifth instruction relates to the credibility of the witnesses, and is not a fair substitute for the one refused.

Misconduct of the juror, Thomas R. Berry, is also assigned as a ground for new trial. After the trial had commenced, and during the cross-examination of the prosecuting witness, she became confused, and refused to answer questions, depressed from the heat of a crowded room, some of the affidavits say—and the court allowed her to leave the room, during which time the court took a recess for about one hour. The juror, without the consent of the court, the defendant or any officer, left the jury-box and went down stairs, unattended by any one, into the recorder's office, where he remained, according to the positive affidavit of the recorder, for the space of forty-five minutes. During

this time there were many persons in that office discussing the case; some denounced the defendant, and others exonerated him. There can be no doubt but the conversations and disputes were had in the hearing and presence of the juror, though it does not appear that he took any part in them. He conversed with persons, but not upon the subject of the trial. There appears to have been considerable excitement among the many persons who attended the trial, and opinions were freely expressed. Jurors ought not to become subject to such influences during the progress of a trial. The charge against the defendant was one in which the punishment may be the highest known to the law, the death penalty. The conduct of the juror was a plain violation of section 1909, Revised Statutes, 1879. There is no analogy between this case and those of *State v. Collins*, 86 Mo. 246, and *State v. Payton*, 90 Mo. 220. The conduct of the juror was more like that of the jurors in *State v. Collins*, 81 Mo. 657, and *State v. Murray*, 91 Mo. 95, where this court felt bound to interfere. Here the juror, unaccompanied by any officer, mixed with the excited throng of people, who were discussing the issues of the case on trial with much freedom, and such conduct cannot be upheld.

The judgment is reversed and the cause remanded. SHERWOOD, J., is of the opinion the judgment should be reversed without remanding the cause. BARCLAY, J., concurs in the result, and RAY, C. J., in all that is said in the foregoing opinion.

