RICHARD T. BROWNRIGG, Respondent, v. GEO. P. MASSENGALE et al., Appellants.

St. Louis Court of Appeals, December 9, 1902.

1. **Attorney and Client:** ACTION FOR SERVICES: PETITION: PLEADING: EVIDENCE. Where, in an action by an attorney for services, the petition alleged that he was engaged to investigate the title of certain land in Louisiana, and that he began the investigation by examining the laws of such State, and by corresponding with the owner of the lands, and by examining a deed tendered, plaintiff was not limited by such petition to a recovery for services in examining the laws of Louisiana, but was entitled to recover for all services in the investigation of the title to the lands.

2. ———: EXPERT TESTIMONY: INSTRUCTION: HARMLESS ERROR: PRACTICE, APPELLATE. Where, in an action for attorney's services, the court charged that, if they should find such a sum as, considering all the circumstances, they believed was the reasonable value of his services, error in refusing an instruction that the jury were not bound by the testimony of experts as to the value of such services, was harmless.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Joseph A. Wright* for appellants.

(1) The testimony of attorneys as to the value of legal services rests upon the same basis as other expert testimony, should be received with the same caution, and should not control the judgment of the jury so as to preclude them from exercising their own knowledge and ideas upon the value of such services. To refuse such an instruction is reversible error. Cosgrove v. Leonard, 134 Mo. 419; State v. Witten, 100 Mo. 525; Fullerton v. Fordyce, 144 Mo. 519; Hull v. St. Louis, 138 Mo. 618. (2) Instructions fully covering defendant's theories of the case should be given if requested. It

is likewise true that the instructions given by the court of its own motion ought neither direct the attention of the jury to a cause of action not stated in the petition, nor permit a recovery for services other than those specified in the petition. Warder v. Seitz, 157 Mo. 140; McCarty v. Rood Hotel Co., 144 Mo. 397; Summers v.. Life Ins. Co., 90 Mo. App. 691; Colliott v. American Mfg. Co., 71 Mo. App. 163; Hinckley v. Krug, (Cal. 1893) 34 Pac. 118.

*Claud D. Hall* for respondent.

(1) The weight of expert testimony is, as of other testimony, for the jury; and if expert testimony is before the jury in unexceptional form, it is not reversible error to refuse a mere cautionary instruction in respect to same. Head v. Hargrave, 105 U. S. 45; Cosgrove v. Leonard, 134 Mo. 419; Rose v. Spies, 44 Mo. 20; Fullerton v. Fordyce, 144 Mo. 521; State v. Witten, 100 Mo. 525. (2) An attorney is entitled to reasonable compensation where there is no contract fixing the price of his legal services. Rose v. Spies, 44 Mo. 20; Musser v. Adler, 86 Mo. 445.

BLAND, P. J.—1. After alleging formal matters the petition proceeds as follows.:

"Plaintiff, for his cause of action, states that on or about October 10, 1899, he was engaged by the defendants to render certain legal services; to investigate the title to about thirty-five hundred acres of land, located near the town of Floyd in the State of Louisiana, and which was purported to be owned by one B. W. Griffith of the city of Vicksburg, Mississippi; that the defendants had contracted with the said B. W. Griffith to purchase said lands for seventy-five cents per acre, or two thousand six hundred and fifty dollars.

"The plaintiff says that immediately after his employment by the defendants as aforesaid, he began the investigation of the title to said lands by examining the laws of the State of Louisiana relative to conveyances,

and by corresponding with the said Griffith and others, and examining a certain deed for said lands which said Griffith had made and tendered to the defendants. That the said examination of title was carried on for a period of several days, during which time plaintiff frequently advised the defendants of the progress made in said examination. The plaintiff says that immediately after his employment by the defendants as aforesaid, he advised the defendants that it would be unsafe for them to purchase said lands because the said Griffith did not have and could not make a good title to same, and that the said deed tendered by said Griffith to defendants as aforesaid was not a warranty deed and did not convey the said lands it purported to convey. The plaintiff says that at all times during his investigation of the title to said lands he advised the defendants that the title was defective and that it would be unwise to purchase same.

"Plaintiff says that the services he rendered the defendants aforesaid, in advising defendants that the title to said land was defective, and that the investigations conducted by him were and reasonably are worth the sum of two hundred and fifty dollars; that the defendants promised and agreed to pay the same, but though often thereto requested, they have failed and refused and still fail and refuse to pay the same or any part thereof. Plaintiff says he made demand of payment of said sum of two hundred and fifty dollars on the seventeenth day of November, 1900.

"Wherefore, plaintiff prays judgment against the defendants in the sum of two hundred and fifty dollars with interest from the seventeenth day of November, 1900, and for costs of suit."

The answer was a general denial.

The issues were tried by a jury, who found for the plaintiff and assessed the damages at the amount sued for with six per cent interest thereon from the date of demand of payment. A timely motion for new trial was filed by defendants which the court overruled and defendants appealed.

The evidence is that the defendants are a co-partnership doing business in the city of St. Louis. Prior to the employment of plaintiff by defendants, negotiations had been pending between them and W. B. Griffith, of Vicksburg, Mississippi, for the purchase by defendants from Griffith of about 3,500 acres of land near the town of Floyd, in the State of Louisiana, at seventy-five cents per acre. Negotiations had gone so far that Griffith had executed a deed to George Massengale, one of the defendants, for the land and forwarded it to the Merchants' Laclede Bank of St. Louis, with a draft attached for $2,625, the purchase price of the land. George Massengale was notified by the bank of the reception of the deed and draft about October 10, 1899. He then employed the plaintiff and sought his advice as to the sufficiency of the deed to warrant the title to the land and whether or not it would be safe to accept the deed and pay the draft. At the request of plaintiff, George Massengale procured the deed from the bank for examination and submitted it to the plaintiff, who, after examining it, advised Massengale that the deed did not warrant the title; that it referred to a prior sheriff's deed (not produced) upon which the Griffith title purported to be based and to a mortgage of $500 on a portion of the land. On this advice defendants declined to pay the draft and take the deed. At the request of George Massengale plaintiff gave his opinion in writing in respect to the deed. This opinion Massengale forwarded to Griffith.

A considerable correspondence was thereafter had between plaintiff and Griffith and defendants and Griffith, in respect to Griffith's title, and plaintiff was frequently consulted about the matter by George Massengale. Plaintiff also had correspondence with J. D. Hedrick, clerk of the district court at Floyd, in respect to the record title to the land and made a slight examination of the Louisiana laws in regard to conveyances of real estate or fixed property. The result of this correspondence and of Griffith's investigation of his title

Vol 97 app—13.

disclosed that he had title to only an undivided two-sixths of the land and a possible title to another undivided one-sixth. After this discovery was made Griffith offered to sell his interest in the land to defendants for $1,100. Defendants were very anxious to get possession of the land on account of the valuable timber standing on it and when the offer of Griffith to sell his interest for $1,100 was made, George Massengale consulted the plaintiff as to the advisability of purchasing and wanted to know whether the defendants, if they got Griffith's title, could take possession of the land and take off the timber. Plaintiff advised them that if they did they would have to pay the other owners for their interest in the timber. On this advice defendants refused to purchase and made a demand on Griffith for damages. This demand was unproductive of results.

Plaintiff introduced four reputable attorneys at law, as expert witnesses as to the value of his services, all of whom heard plaintiff's evidence and testified that his services were well worth what he charged ($250). Defendants did not deny the employment of plaintiff, nor that he rendered services, but George Massengale testified that plaintiff agreed to take one-half of the damages he could recover of Griffith in full compensation for his services. Plaintiff emphatically denied that he made any such agreement and the facts and correspondence make it appear extremely improbable that any such arrangement was agreed to. Defendants offered no evidence as to the value of the plaintiff's services.

Defendant's counsel went into a very lengthy cross-examination of plaintiff for the purpose of showing the extent of his (plaintiff's) examination and knowledge of the laws of Louisiana and now contends that the suit is for services for the investigation of the laws of that State. This is too narrow a view of the petition; that instrument is much broader than defendants' counsel is willing to admit. The suit is for services rendered in the investigation of title to lands in Louisiana. This

investigation incidentally involved some investigation of the laws of that State pertaining to the conveyance of lands. Plaintiff's services were rendered, as he alleges in the petition, to investigate the title to the lands. They were beneficial to the defendants and they should pay what they are reasonably worth in the absence of any express agreement for compensation.

The jury were instructed to find for plaintiff, if there was no agreement for compensation, and find for defendants, if they believed plaintiff agreed to be compensated out of damages to be recovered of Griffith.

2. Defendants asked, but the court refused, the following instruction:

"6. The court instructs you that the evidence given by attorneys as to the value of plaintiff's services does not preclude you from exercising your own knowledge upon the value of such services. It is your duty to weigh the testimony of the attorneys as to the value of plaintiff's services, if any, by reference to their nature, the time occupied in their performance, and other attending circumstances, and you may apply to it your own experience and knowledge, if any, of the character of such services."

That the testimony of experts is only advisory, and that the jury is not required to surrender their judgment or to give a controlling influence to the opinion of expert witnesses, but may exercise an independent judgment from their own knowledge and experience, is well-settled law here and elsewhere. Cosgrove v. Leonard, 134 Mo. 419; The State v. Witten, 100 Mo. 525; City of Kansas v. Street, 36 Mo. App. (K. C.) 666; The W. U. Tel. Co. v. Guernsey & Scudder Light Co., 46 Mo. App. (St. L.) 120; Head v. Hargrave, 105 U. S. 45; Randall v. Packard, 142 N. Y. 47; Rogers on Expert Testimony, sec. 204. It was error to refuse the instruction, for which the judgment should be reversed, unless the error is cured by other instructions given by the court.

The jury were instructed that they were the sole

judges of the credibility of the witnesses and the weight to be given to their testimony and that:

"3.   If your verdict is for the plaintiff you will find for him in such sum as considering all the circumstances in evidence you believe is the fair and reasonable value of his services, together with interest thereon at the rate of six per cent from the date of any demand you may believe was made of defendant by plaintiff for payment."

Strictly speaking this instruction excluded the expert testimony from the consideration of the jury in estimating the damages.  But they were told to take into consideration all the circumstances in evidence and from these to give plaintiff what they (the jury) believed would be a fair and reasonable compensation for his services.  The circumstances in evidence were the employment and the nature and extent of the professional services rendered by plaintiff.  The expert evidence did not prove, or tend to prove, all or any one of these circumstances and if the jury were guided solely by the instruction they measured the damages (compensation) by their own experience and knowledge of the value of the services and not from the opinion of the expert witnesses, and we will not assume that under such an instruction the jury did not exercise an independent judgment in estimating the damages, but will assume that they were guided solely by their own judgment and experience in like matters and hold the error in refusing the instruction was cured by the one given.  The evidence as to the value of the services was all one way and the facts and circumstances in evidence show that the amount awarded by the jury was reasonable and just.

The judgment is affirmed.    *Barclay* and *Goode, JJ.,* concur.