## CHAMPAGNE v. HAMEY, Appellant.

### Division Two, June 20, 1905.

1. **ASSAULT: Rape: Civil Action: Complaint.** In a civil suit by a girl for damages for forcible ravishment, the failure of plaintiff to make an outcry at the time of the assault if she had opportunity to do so, and if not within a reasonable time thereafter when she did have such opportunity, and a failure to complain of the assault to any one prior to the birth of her baby, and continued friendly relations with defendant after the alleged assault, are, ordinarily, circumstances which the jury should take into consideration in determining whether or not the defendant did have carnal knowledge of her by force and against her will. And the refusal of an instruction so declaring, in a case where plaintiff at the time of the alleged assault was sixteen years old, was at her foster mother's house alone, while her father and defendant's wife and father were in their house only ninety feet away, and after the assault she continued to live with her foster mother and on friendly relations with her own father and the other members of defendant's family, there being no threats of harm if she did tell, is reversible error.

2. **——: ——: ——: Instruction: Applicable to Criminal Case.** There is no reason why an instruction declaring that the fact that plaintiff did not disclose the forcible assault within a reasonable time after the opportunity for her to do so presented itself is in itself a reason for impeaching the veracity of her story, should be given in a criminal case and not in a civil case. An instruction so declaring is applicable in a criminal case and also in a civil case.

3. **——: ——: Corroboration: No Evidence: Reversal.** It is not necessary that plaintiff, in an action for damages for the forcible ravishment of her person, be corroborated. But where her statements are in conflict with the experiences of common life and the ordinary instincts and promptings of human nature, and are negatived by her own conduct and by the physical facts and occurrences and circumstances surrounding her and the alleged assault, a judgment for her will be reversed.

4. **——: ——: ——: This Case.** Plaintiff was sixteen years old, strong, healthy and vigorous. She had lived with a foster mother since she was two years old; defendant, 36 years old, had married her foster mother's daughter. The two families lived in houses less than ninety feet apart, in the same yard. She states that one evening in June, at dusk, while she was

combing her hair, at a time when her foster mother was at de-
fendant's house, he entered the house where she was alone,
threw his arms about her, kissed her, pushed her upon the bed,
placed a pillow over her face and mouth, and while he held
the pillow down with one hand while she held to his other
hand with both of hers, he forcibly ravished her. At the time
defendant's wife and his father, her foster mother and her
own father were in defendant's house. Defendant left. She
went to the porch and sat down, and her foster mother return-
ing in fifteen minutes saw nothing to indicate that she was or
had been excited or was troubled or that her clothes or per-
son were in any way disarranged. The windows and doors of
the house in which the alleged rape took place and of defend-
ant's house were open at the time, and nothing was heard by
the occupants of defendant's house of an unusual character.
She made no outcry then, said nothing about the affair when
her foster mother returned or at any other time to her or to
her father or to any person until three months after her baby
was born, and did not charge defendant with the assault until
he refused to support her child. Defendant and his father tes:
tified that they were at home during that evening and were
able to fix the date by some papers. *Held,* that the judgment
for plaintiff for civil damages should be reversed.

5. ———: ———: **Conviction in Criminal Case.** Defendant had
been convicted of carnal knowledge of plaintiff, a girl of pre-
vious chaste character, between fourteen and eighteen years
of age, but not of rape, and that judgment this court affirmed.
*Held,* that the approval of the judgment in that case is no
binding reason why the court should not set aside a judgment
for ten thousand dollars civil damages in this case, for the basis
of this action is that defendant forcibly and against her will
ravished plaintiff, and that was for a violation of the statute
in reference to consent.

6. ———: ———: ———: **Rule of Evidence: Appellate Practice.**
The rule of law that in a criminal case the jury must find the
defendant guilty beyond a reasonable doubt does not shade the
court's right to refuse to submit the case to the jury on the
·ground that there is no substantial evidence to support the
charge. The court's duty and right are the same, whether the
case be civil or criminal; that is, if there is no substantial evi-
dence to support the petition or the indictment, the court will
sustain a demurrer to the evidence. The distinction as to the
consideration to be given to the evidence in civil and criminal·
cases, has reference to its consideration by the jury after the
case is submitted to them: in a criminal case, the defendant's
guilt must be shown beyond a reasonable doubt; in a civil
case, the preponderance of the evidence must be with plaintiff.

Champagne v. Hamey.

But the appellate court will reverse a judgmnt in neither case except where there is no substantial evidence to support it, but where there is no such evidence it will reverse the judgment, whether the case be criminal or civil.

7. **APPELLATE PRACTICE: Remarks of Counsel.** Remarks of counsel to the jury must be objected to at the time they were made and exceptions to the ruling thereon preserved in the bill of exceptions. They cannot be preserved for review by affidavit, where no objection was made at the time they were uttered.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

REVERSED.

*Culver, Philip & Spencer* for appellant.

(1) The trial court erred in refusing to sustain a demurrer to the evidence. The theory of the court was that there was a scintilla of evidence to go to the jury, that the testimony of the plaintiff if true, made a case, and though her testimony was uncorroborated, unreasonable and unnatural, and opposed to all the probabilities, circumstances and physical facts, still it was the duty of the court to submit the case to the jury, and the province of the jury to determine whether her testimony was true or false. We respectfully submit that such is not the law in this State. The court should direct a verdict for either party where the facts are undisputed and the witnesses unimpeached, or where the verdict, if returned for the opposite party, would be set aside as against the law and the evidence—and this, though there be a scintilla of evidence. Morgan v. Dinfee, 69 Mo. 476; Bank v. Hamline, 68 Mo. App. 487. Courts will not stultify themselves by giving credence to evidence which is in conflict with conceded physical facts, or against reason and contrary to common observation and experience. In criminal and civil cases, where the testimony is contrary to the daily experience

of common life, or at war with the conceded and indisputable physical facts, neither courts nor juries can, without stultifying themselves, yield to it an iota of probative force or effect, and a verdict based on such testimony will not be permitted to stand. Payne v. Railroad, 136 Mo. 575; Lien v. Railroad, 79 Mo. App. 475; Kelsay v. Railroad, 129 Mo. 362; State v. Dettmer, 124 Mo. 435; State v. Nelson, 118 Mo. 124; State v. Bryant, 102 Mo. 24; State v. Turlington, 102 Mo. 642; State v. Anderson, 89 Mo. 332; Hayden v. Railroad, 124 Mo. 566; Lane v. Railroad, 132 Mo. 4. We do not claim that plaintiff must be corroborated by another witness before she is entitled to have her case submitted to a jury. But we do claim that she is not entitled to go to the jury, and not a single case, civil or criminal, can be found in the books in which a verdict against a defendant in an action or prosecution for rape has been permitted to stand, where the case is bottomed upon an uncorroborated statement of the complainant, as unreasonable, as unbelievable and so entirely opposed to common knowledge and experience and all the other facts and circumstances in evidence, as is the statement of the plaintiff in the case at bar. Upon the authority of the opinion of all of the judges of this court the evidence in this case is not sufficient to take the case to the jury. And that opinion is sustained by all the authorities. State v. Hamey, 168 Mo. 167; State v. Patrick, 107 Mo. 147; Topolanck v. State, 40 Tex. 160; 1 Wharton, Crim. Law (9 Eed.), sec. 565; Matthews v. State, 19 Neb. 330; Price v. State 38 S. W. 988; State v. Chapman, 88 Ia. 254; State v. Connelly, 57 Minn. 482; Mores v. Territory, 65 Pac. 165; Monroe v. State, 13 So. 884; Robinson v. Musser, 78 Mo. 153; 23 Am. and Eng. Ency. Law (2 Ed.), 883. (2) In refusing instruction 13 the court committed error. State v. Witten, 100 Mo. 528; State v. Patrick, 107 Mo. 169; State v. Wilson, 91 Mo. 410; Yeager v. Berry, 82 Mo. App. 534; Young v. Johnson, 25 N. E. 363.

*Grant S. Watkins* for respondent.

(1) It is not the law in this State that corroborative testimony must be had in order to base a verdict for damages for rape. The demurrer was properly overruled. State v. Marks, 140 Mo. 664; State v. Hamey, 168 Mo. 167, 90 Mo. App. 416; State v. Knox, 142 Mo. 521. (2) There was no evidence on which to base an assumption that the act complained of was by consent; it was either committed as plaintiff states, or not at all by defendant. The instruction was not proper in case at bar. State v. Hamey, 168 Mo. 167. (3) When defendant denied having intercourse with plaintiff, he attacked her reputation for virtue, chastity and truthfulness and put her character in issue. Defendant also attempted to discredit plaintiff's testimony by asking her if she did not testify in former trial to facts contrary to what she had testified to in case at bar. Character in cases of seduction and rape, slander, etc., are excepted cases, and the nature of the action puts character in issue. 23 Am. and Eng. Ency. Law, 870. Defendant introduced evidence of his good character; if her character was not in issue, neither was his. Defendant cannot adopt one theory in the trial court and another in the appellate court, nor can he complain of a theory which he himself adopted. Dudley v. McClure, 65 Mo. 243; Vawter v. Hultz, 112 Mo. 639; Toomey v. State, 8 S. & M. 104.

FOX, J.—This cause is here upon an appeal from a judgment against the defendant in the Buchanan County Circuit Court. The cause of action upon which this judgment rests, is thus stated by the plaintiff:

"Plaintiff for cause of action, states that she is an infant of the age of seventeen years; that she was on the 7th day of June, 1899, just a few days past sixteen years old; that her mother is dead and that Mrs. Erwin was her foster mother and took her when she was

about two years old; that she lived with her foster mother until the latter part of March, 1900. That the defendant is the son-in-law of her foster mother and married her foster sister; that her foster mother, defendant and her foster sister live almost in the same yard; that during all her lifetime, plaintiff had at times helped her foster sister and worked for her sister and looked to the defendant and plaintiff's foster sister for protection, and was by given consent under their control. That her foster mother lived on the property belonging to the defendant and relied on defendant for support; that the house in which the plaintiff and her mother lived was close to the house in which defendant and his wife, plaintiff's foster sister, lived.

"Plaintiff further states that in the evening on or about the 7th day of June, 1899, defendant came to the house where plaintiff lived with her foster mother, and found plaintiff alone and found plaintiff's foster mother was away from home; that defendant, finding plaintiff alone, caught plaintiff and threw plaintiff on the bed and took a large pillow and placed it over plaintiff's face so that plaintiff could not hollow and threatened plaintiff and forcibly ravished plaintiff and had intercourse with plaintiff; that plaintiff fought until she was exhausted, but that defendant accomplished his purpose; that on account of said aforesaid act, plaintiff became pregnant with child and on the 3rd day of March, 1900, a child was born, being the child of defendant. Plaintiff further states that, on account of said aforesaid act of defendant, plaintiff's life is ruined and that plaintiff is disgraced and that she is compelled to support her child, all of which is caused by said defendant by his criminal acts as aforesaid.

"Wherefore, plaintiff says she is damaged in the sum of twenty thousand dollars. Wherefore, plaintiff prays judgment in the sum of twenty thousand dollars and for such other and further relief as the court may deem proper."

The answer was a general denial.

The facts upon which this judgment is sought to be supported, were substantially as follows:

The plaintiff testified that she was 16 years of age in May, 1899. The alleged assault occurred June 7, 1899. Her mother having died, Mrs. Erwin, the defendant's mother-in-law, took her to raise when she was two years old, and from that time on she lived with Mrs. Erwin in a two-story house on a farm belonging to the defendant's father. The defendant was raised on the same farm. He was a married man, 36 years of age, and his family consisted of his wife and children, the oldest 11 and the youngest 3 years old at the time of the alleged assault. The defendant, his wife and children, the defendant's father and the plaintiff's father lived in a two-story house on the same farm in the same yard about 80 feet from the house in which Mrs. Erwin and plaintiff resided.

The testimony of the plaintiff is that on the evening of June 7, 1899, she was alone in her home. About 8:30 o'clock she was standing in the front room combing her hair. It was dusk and getting dark. Some one entered and threw his arms around her waist and kissed her. She jerked free and turning, recognized the defendant. She ran towards the door, but before she could escape he caught her again, dragged her to a bed in the room and threw her upon it. She struggled to get away from him, but she could not. She tried to scream, but he forced a pillow over her mouth and prevented her. She testified that she resisted, but he raised up her clothes and raped her; that she fainted, and when she regained consciousness the defendant was standing by the side of her bed. He helped her up, saying, "My God, Jess, don't tell my wife," but she says she didn't say that she would or that she would not. Then he went over to his house while she went out on the porch and sat down. She testified that at the time she was a pure, innocent girl, a few months past.

sixteen years old, strong and healthy; that she had never had intercourse with any man. Upon cross-examination plaintiff testified that the doors and windows to her home and defendant's home were open, and that at the time her foster mother, her father, defendant's father and his wife were in the other house in the same yard not more than 90 feet away.

The plaintiff made no complaint that she was under restraint, or influence of threats or that she apprehended any violence from the defendant. It further appears that she made no complaint or outcry during the struggle before the pillow was placed over her mouth or after its removal, nor was there any indication or exhibition of anguish on the part of the plaintiff after it is claimed that this outrage was perpetrated upon her, but it does appear that she went out on the front porch and sat down to cool off. When the inquiry upon cross-examination was made of the plaintiff as to why she didn't make an outcry after the pillow was removed from her mouth, her reply was that "she didn't know." She further testified that the defendant held the pillow over her mouth with one hand and she had hold of his other arm with both of her hands, and upon inquiry as to how the defendant effected an entrance, she replied she didn't know, that she supposed she fainted.

There is an entire absence of any testimony as to the result of the outrage charged to have been committed upon plaintiff. There was no testimony that any of her clothing was disordered or torn; there was no evidence of any indication of any laceration of her private parts, or that she bled or that her person was scratched or showed any signs of violence, and it may be added that there is an absence of any testimony showing the physical condition and mental anguish which ordinarily follow. It is also shown by the evidence that her foster mother came home ten or fifteen minutes after the occurrence and that plaintiff made no

complaint to her nor were there any signs or indications as testified to by her mother that she had been outraged. Plaintiff made no complaint to her father, to the defendant's wife or his father, nor to any other person. Her conduct and actions towards the defendant subsequent to the alleged commission of the outrage upon her person, was the same as before the assault was made. They frequently met and were upon friendly terms. It also developed that she never spoke to the defendant about the commission of this assault until about three months after her child was born. Then, she says, for the first time she mentioned it to him. She went out in the field where he was ploughing and asked him to support the child. He refused; then she said to him, "This is your child," and he replied, "Oh, no, Jessie, you can't come that." And then, according to her own story, he said to her: "Did you tell your father about this?" and she said, "No." "And he said, 'Well let us go right over here and see your father now,' didn't he? A. That is what he said, yes, sir. Q. And he walked over there with you and you saw your father? A. Yes, sir. Q. With you? A. Yes, sir. Q. This man that ravished you? A. Yes, sir.

Mrs. Erwin, the plaintiff's foster mother, testified that after the date of the alleged assault the plaintiff and defendant were just as friendly as they were before; that she noticed no difference in them and they continued to live as one big family; that the plaintiff never mentioned the occurrence to her, and that at no time upon her return home did she find the plaintiff in an excited condition.

The defendant denied that he had ever had sexual intercourse with the plaintiff, or that he ever knew or heard of any claim that he had been intimate with her until about three months after the child was born. Then, one day, she came to him in the field where he was ploughing. The plaintiff's father was ploughing in the same field "about forty rows away." She first

said to defendant, "I came to see how much you would give to help to support that child." She hesitated for a moment. The defendant thought she was "begging." He made no reply. Then she said, "You know it is yours." To which the defendant replied: "You know it is not; I thought you were begging, but this way, I won't give you anything." Q. Then what did she say? A. Well, she didn't say much of anything. I asked her if she had told her father and she said no; and I said let's tell him. We walked up to where he was, she on the inside of the fence and me on the other side. I walked up and told him what she had said. He said she ought to know, he didn't know, he couldn't tell. She lived there till March or April, 1900. I saw her over at our house several times. I always spoke to her, and she to me. We were just as friendly as we had always been, and I didn't notice any difference in her conduct. I never had any idea that I was accused of having anythin to do with her."

The defendant and his father both testified that on the evening of June 7th, from the time the defendant came to him from the field, about seven o'clock, until about nine, they were both at home. The defendant and his father both refreshed their memories as to the fact that they were at home on the evening it was alleged this outrage occurred by reason of some insurance policies having been procured by the father on that evening, and the date of the policies and check and receipt given in respect to them were introduced in corroboration of their testimony as to what they had said in reference to being at home on that evening.

At the close of the evidence the court gave the following instructions at the request of the plaintiff:

"1. The court instructs the jury that if you believe from the evidence that the defendant did, on or about the 7th day of June, 1899, forcibly ravish plaintiff and against her will, and as a result thereof plaintiff became pregnant and that there was a child born

·of said illegal act on the third day of March, 1900, then your verdict will be for the plaintiff.

"2. The court instructs the jury that if you find for the plaintiff, you will find for her in such sum as you may believe from all of the evidence in proof that she has been damaged, taking into consideration the illegal act complained of, the result of said act, the disgrace and wounded feelings of the plaintiff, and you will find for her in such sum as you may believe she has been damaged, not to exceed the sum of twenty thousand dollars.

"3. The jury are the judges of the evidence and credibility of the witnesses, and you may give to the testimony of any witness such weight as they may deem it entitled to under all the facts and circumstances in proof, and if the jury believe that any witness has wilfully sworn falsely to any material fact in the case, they are at liberty to disregard the whole of the testimony of such witness. And in reconciling the conflicting testimony, if there be any, the jury are not confined alone to the direct statements of the witnesses, but may take into consideration all of the facts and circumstances as shown by the evidence.

"4. The court instructs the jury that it is not essential to a recovery that plaintiff should prove by the direct testimony of eye-witnesses that defendant did debauch and carnally know the plaintiff forcibly and against her will; such fact may be proved by the proof of the facts and circumstances from which it may be reasonably and satisfactorily inferred. If, therefore, the jury believe from all the facts and circumstances in proof that defendant did have sexual intercourse with plaintiff at about June 7, 1899, without the consent of plaintiff, and forcibly and against her will, they would be warranted in so finding and the weight should be for the plaintiff."

At the request of the defendant the jury were instructed as follows:

"1. You are instructed that the burden of showing by a preponderance of the evidence to the reasonable satisfaction of the jury that the defendant assaulted and ravished the plaintiff forcibly and against her will is upon the plaintiff, and unless she has done so your verdict must be for the defendant.

"2. The court instructs the jury that even though you may believe from the evidence that the defendant did have sexual intercourse with the plaintiff, yet if you believe from the facts and circumstances in evidence that the plaintiff consented to have sexual intercourse with the defendant, then the defendant is not liable in any sum to the plaintiff, and your verdict must be for the defendant. And if you believe that the defendant did have sexual intercourse with the plaintiff, then in determining whether such intercourse was against the will of plaintiff or whether it was with her consent, you must take into consideration the reasonableness or unreasonableness, the probability or improbability of the testimony of the witness, and all of the other facts and circumstances in the case.

"3. The court instructs the jury that if you believe from all the facts and circumstances in evidence in this case that the defendant did not have sexual intercourse with the plaintiff, then your verdict will be for the defendant.

"4. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. And in determining such weight and credibility you should take into consideration the probability or improbability, the reasonableness or unreasonableness of the witness's statements, the interest, if any, which such witness has in the result of the trial, together with all the facts and circumstances detailed in the evidence."

The defendant requested the court to give the following instructions, which were refused:

"A. The court instructs the jury that under the

pleadings and evidence in this case your verdict must be for the defendant.

"B.  If the jury believe from the evidence that at the time the alleged assault on plaintiff is alleged to have been committed, or within a reasonable time thereafter, the plaintiff had an opportunity to make an outcry, and that she did not do so, and did not as soon as an opportunity offered, or at any time prior to the time her baby was born complain of the alleged assault to any person, and that she continued on friendly relations with the defendant after the date of said alleged assault, then the jury should take these circumstances into the case in determining whether the defendant did, in fact, have carnal knowledge of the plaintiff by force and against her will, and if you believe from all these circumstances and all the evidence in the case that the defendant did not have sexual intercourse with the plaintiff, or even if you believe that he did have sexual intercourse with her by her consent, then the defendant is not liable in this case and your verdict must be for the defendant.

"C.  The court instructs the jury that the burden is upon the plaintiff to establish to your satisfaction that the defendant had sexual intercourse with the plaintiff by force and against her will.  And the court instructs you that in this case the law presumes that the defendant is innocent and that he did not have sexual intercourse with the plaintiff, and before you are authorized to find for the plaintiff the evidence in favor of the plaintiff should be strong enough in your opinion to overcome not only the testimony and evidence offered by the defendant, including all the facts and circumstances in this case, but also the presumption which the law raises that the defendant did not commit the assault alleged in the petition."

The cause was submitted to the jury upon the evidence and instructions, as herein indicated, and they

returned a verdict finding the issues for the plaintiff, and assessed her damages at the sum of ten thousand dollars.

From this judgment, defendant in proper form and due time prosecuted the appeal, and the cause is now before us for consideration.

OPINION.

Numerous errors are assigned as grounds for the reversal of the judgment in this cause.

The defendant requested the court to give the following instruction, which was by the court refused:

"B.   If the jury believe from the evidence that at the time the alleged assault on plaintiff is alleged to have been committed, or within a reasonable time thereafter, the plaintiff had an opportunity to make an outcry, and that she did not do so, and did not as soon as an opportunity offered, or at any time prior to the time her baby was born complain of the alleged assault to any person, and that she continued on friendly relations with the defendant after the date of said alleged assault, then the jury should take these circumstances into the case in determining whether the defendant did, in fact, have carnal knowledge of the plaintiff by force and against her will, and if you believe from all these circumstances and all the evidence in the case that the defendant did not have sexual intercourse with the plaintiff, or even if you believe that he did have sexual intercourse with her with her consent, then the defendant is not liable in this case and your verdict must be for the defendant."

The refusal of the court to give this instruction is one of the errors assigned by appellant as grounds for the reversal of this judgment.

In State v. Witten, 100 Mo. 525, an instruction substantially the same as the one refused in this cause was requested and refused, for which action of the court, the judgment in that cause was reversed.

BLACK, J., speaking for the court, said: "An outcry and resistance are important elements of evidence, and a want of these circumstances, where they may reasonably be expected, go far to disprove the charge of rape (State v. Cunningham, ante, p. 382); and a concealment of the injury, where there is an opportunity for early disclosure, may lead to a like inference. The evidence, as a whole, tends strongly to show that this is one of those cases where there has been a mutual gratification of desires and passions, and that the notion of force, on the part of the man, and want of consent, on the part of the woman, is an afterthought. No disclosure was made by the woman until discovered to be pregnant, and the first charge of force was made more than a year after the alleged outrage. Under these circumstances the instruction should have been given. The judgment in the case of State v. Wilson, supra, was reversed, alone, because a like instruction was not given as it was asked, and we must either overrule that case or reverse the judgment in this one."

In State v. Wilson, 91 Mo. 410, an instruction in the following form was requested and by the court modified, as hereinafter stated, and given: "Although the jury may believe, from the evidence, that the defendant had intercourse with Cora Leis, yet, unless that intercourse was forcible on the part of the defendant, and against the consent of Cora Leis, the jury will find the defendant not guilty; and, in arriving at a conclusion as to the question of force and consent, the facts that the said Cora Leis made no complaint at the time, or within a reasonable time thereafter, and that pregnancy followed a single sexual connection are legitimate subjects of inquiry in determining whether there was force on the part of said defendant, or consent to the intercourse by the said Cora Leis."

"The court gave this instruction in a modified form by adding after the word 'connection,' when it

last occurs in the instruction asked, the words, 'in connection with other testimony.' "

It was ruled in that case, that the instruction should have been given, as requested, and that the modification of it was error, and the cause was reversed. To the same effect is the case of State v. Patrick, 107 Mo. 147.

In State v. Baker, 136 Mo. 74, an instruction similar in form to that requested in the case herein cited, was refused and it was held not to be error; but an analysis of that case, demonstrates that the action of the court was predicated upon the peculiar facts developed upon the trial. Her father was charged with the offense, she had no mother or sister near her, and was completely under the domination of her father, and he had threatened to kill her if she divulged what had occurred. She had no female friends to whom she could talk about the outrage that had been perpetrated upon her. Upon this state of facts, the court very properly. ruled that it was not error to thus refuse the instruction, and the correctness of the ruling, so far as the instructions were involved in the Patrick case, was expressly recognized.

In Young v. Johnson, 25 N. E. 365, an instruction of the same import as the one under discussion was given, and the Court of Appeals of New York, in discussing its correctness, said: "The court, at the request of the defendant, instructed the jury, in substance, that the fact that plaintiff did not disclose the assault complained of within a reasonable time after the opportunity presented itself for her to do so, was in itself a reason for impeaching the veracity of her story. It was undisputed, that the plaintiff delayed disclosing to her female friends the alleged conduct of the defendant towards her until she was satisfied of her pregnancy, though she met them frequently, and under circumstances that furnished a very favorable opportunity for her to do so. This was a circumstance bearing

upon the plaintiff's credibility, and the general merits of her case, that was proper for the jury to consider, and the charge of the court in that respect was correct. [People v. O'Sullivan, 104 N. Y. 481.]''

It is insisted by respondent that this instruction is only applicable to criminal causes; hence there was no error in its refusal in this, a civil cause. We are unable to agree with learned counsel for respondent, upon this insistence. Plaintiff's cause of action is predicated upon an assault upon plaintiff with force and violence, and by such means, against her will, ravishing her. The purpose of the trial in this cause is to ascertain if it is a fact that plaintiff was forcibly ravished, and it is clear that the same purpose is sought in a trial upon a criminal charge of rape—the same evidence is admissible tending to show the commission or non-commission of the act charged.

The jury are the triers of the facts, and if in a civil or criminal case the commission of the same act is being investigated and the jury are required to respond by their verdict as to whether or not the act has been committed, we are unable to assign any reason why they are not entitled to the same instructions upon the evidence tending to show that the act was or was not committed, to guide them in reaching a conclusion in a civil, as in a criminal case. The case of Young v. Johnson, supra, was a civil case, and it will be observed that the New York court cited in support of its conclusions, People v. O'Sullivan, 104 N. Y. 481, which was a criminal case, doubtless upon the theory that the principles were applicable in civil and criminal cases alike. Instruction B properly declared the law and should have been given, and it was error for the court to refuse it.

It is insisted by appellant, that certain remarks of counsel for plaintiff in argument of the case to the jury, constituted error. This insistence is directed to the statements, as shown by affidavit on file, by counsel

to the jury, that "the defendant has been indicted for this offense." Upon this question it is only necessary to say that the error complained of is nowhere properly preserved for review in the bill of exceptions. While it is shown by affidavit that counsel made this statement, and doubtless it was made, yet the complaint as to its being made cannot be preserved by a mere affidavit. The argument of counsel is a part of the trial and occurs during the progress of the trial, and any errors in respect to such argument this court is only authorized to review when they are preserved by timely objections and exceptions made at the time, all of which must be made to appear in the bill of exceptions. It not being disclosed by the bill of exceptions that the remarks of counsel complained of were objected to at the time they were made, such alleged error is not before this court for review. [State v. Meals, 184 Mo. 244.]

There are many other errors urged by counsel for appellant, as reasons for the reversal of this judgment, but entertaining the view that the evidence in this cause is insufficient to support the verdict, we will direct our attention to the overshadowing error complained of, that is, the refusal of the court to direct the jury to find the issues for the defendant.

To entitle plaintiff to recover in this action it must be shown by some substantial evidence that the defendant, by force and violence and against her will, ravished her. We have read in detail all the evidence introduced upon the trial of this cause, and after a careful consideration of it we are unable to escape the conclusion that the verdict should not be permitted to stand.

The statements of plaintiff as to this occurrence must be viewed in the light of all the surrounding facts and circumstances. If the physical facts and all the circumstances appearing in evidence, together with the surrounding conditions, absolutely negative and de-

stroy the force of such statements, then, in contemplation of law, such statements do not amount to any substantial evidence of the facts to which they relate. We do not mean by this that the prosecutrix must be corroborated, for such is not the law of this State. [State v. Marcks, 140 Mo. 656.] But we do hold that statements made by a witness that are, not only in conflict with the experience of common life and of the ordinary instincts and promptings of human nature, but negatived as well by the conduct of the witness, and the conditions and circumstances surrounding the occurrence to which they have application, are not sufficient to support the grave and serious charge of *rape,* and this is true whether the charge is made in either a civil or criminal proceeding.

The plaintiff in this case was past sixteen years of age, strong, healthy and vigorous, was not under the dominion of the defendant, nor was her conduct restrained, so far as the testimony discloses, by threats, fear of violence or duress on the part of the defendant. The proof of the charge of *rape* as alleged in the petition, rests entirely upon the version given of the occurrence by the plaintiff. It is claimed by respondent that plaintiff was ravished by force and violence, in a room with the doors and windows open, within ninety feet of the home of defendant in the same yard; that in the house of defendant, situated as herein indicated, there were at the time it is said that this rape was committed, the father and wife of the defendant, as well as plaintiff's foster mother; that the windows and doors of the house of defendant were open and nothing to prevent the occupants of it from hearing even the slightest noise. No outcry was made either before it is claimed the pillow was placed over her mouth or after its removal; but this is not all: a few minutes after plaintiff claims this terrible outrage was perpetrated upon her, the foster mother appears upon the scene, and not a word does plaintiff utter to her as to the heinous of-

fense committed by defendant. The mother testified that she observed no evidence of excitement or agitation on the part of the plaintiff. No greater outrage can be perpetrated upon a young, innocent girl, than the one charged in this petition, and yet the record discloses that about a year elapsed before any complaint was made by the plaintiff that this terrible crime was committed upon her. If she was ravished in the manner as stated, the instincts of girlhood innocence to make complaint to her father and mother, in the absence of any threats of violence or duress, would have instantly been asserted, and the outrage disclosed; on the other hand, if the sexual intercourse was by consent, the persistent and continued concealment of such illegitimate intercourse can be readily reconciled with the conduct of plaintiff, and if there was sexual intercourse between them that is the only theory upon which her conduct can be reconciled.

The conditions and circumstances surrounding this occurrence, as related by plaintiff, the absence, immediately after it is claimed the offense was committed, of the usual and ordinary indications of the perpetration of such an outrage, and the course of conduct and manner of the defendant in respect to such occurrence, are amply sufficient to destroy all probative force or effect of plaintiff's statement concerning the force and violence that was related by her.

The correctness of the conclusions reached in this case, is emphasized by the expression of the views of this division of the court, when substantially the same facts were in judgment before it, in State v. Hamey, 65 S. W. 946.

The facts as to the outrage complained of in this case were fully presented to this court in that case, and while the charge in that case was not that of rape, yet all the facts were developed at the trial, and if there was any substantial difference with the facts in the case at bar, it is that the facts in the criminal case were

stronger than in the one now being considered. GANTT, J., in speaking of the facts in State v. Hamey, above cited, thus expressed his views. He said: "For my part I do not believe there was sufficient evidence in this case to establish the crime of rape; but there was evidence to sustain the charge that defendant, a person over the age of sixteen years, had carnal knowledge of an unmarried female of previously chaste character between the ages of fourteen and eighteen years of age."

It is clear, if the testimony was insufficient in that case to establish the crime of rape, nothing having been added to the facts as presented in the case at bar, it is insufficient in this case.

Counsel for respondent, however, contends that the case in which Judge GANTT expressed his views as to the facts was a criminal case, and that in a criminal case the testimony must show the guilt of the defendant beyond a reasonable doubt, whereas in this case it is only necessary to establish the facts by a preponderance of evidence. That is true, but that in no way conflicts with the principle that in either a civil or criminal case there must be sufficient evidence to establish the charge. The rule in respect to submitting a cause to the jury, which has been uniformly adhered to by the courts, is, where there is substantial testimony upon the charge in the information or indictment, or in a civil case upon the allegations in the petition, the cause is submitted; if there is an absence of substantial testimony, the court directs a verdict for the defendant. In either case the court must first determine whether or not there is sufficient testimony to authorize its submission to the jury. The only distinction, after the court determines that there is substantial testimony which warrants its submission to the jury, is as to the weight of the testimony and its effect upon the minds and consciences of the triers of the fact. In a criminal case, the testimony should leave no reasonable and substantial doubt touching the guilt of the party charged;

in a civil case, it is only required that the allegations constituting the cause of action should be established by a preponderance of the evidence.

The question of doubt in a criminal case, where there is substantial testimony, is always directed to the triers of the fact, and they are instructed on that subject; but the court, in either civil or criminal cases, determines in advance whether there is sufficient testimony to authorize the submission of the cause to the jury. There can be but one conclusion drawn from the remarks above noted by GANTT, J., upon the facts in that case, and that is, that while the evidence may be sufficient to show sexual intercourse, which was unlawful by reason of the age of the prosecutrix, it is insufficient to show that such intercourse was accomplished by force and violence and against the will of the plaintiff.

SHERWOOD, J., in discussing the facts of that case, after reviewing the authorities applicable to charges of the nature contained in the petition in this action, said: ''Acting in the light of these authorities, and, indeed, of the experience of common life and of the ordinary instincts and promptings of human nature, we hold that a verdict based on such evidence as above offered by the State should not be permitted to stand; that evidence is contrary to all rational belief and all prior observations of human action in like circumstances.''

While the Court in Banc affirmed the judgment of the trial court as to the charge, GANTT, J., delivering the opinion, there is nothing in the opinion affirming the judgment, that there was any change of views as to the insufficiency of the evidence to establish the charge alleged in the petition, which is essential to warrant a recovery in this action.

We repeat what was suggested in the discussion of the facts of this case when being considered by this court in the criminal proceeding, that the plaintiff for

twelve months "never, by word, sign or syllable, indi- cated to a single human being that she had been ravished;" no complaint whatever, as to the terrible outrage for which she now seeks to recover damages, no indication, immediately after she says the offense was committed, of excitement, mental distress or anguish, an entire absence of any disordered or torn condition of her clothing, or bruises or scratches upon her person. After diligent search, we are unable to find a judgment for the plaintiff, either in a civil or criminal case, that has been permitted to stand upon testimony of the nature and character disclosed in this record.

It may be that plaintiff was outraged as charged in the petition; if so, we confess that it was unfortunate that her conduct was so in conflict with the ordinary instincts and promptings of human nature, as to absolutely negative any such conclusion that she was forcibly ravished. As to whether she was or not, it is unnecessary for us to express an opinion; it is sufficient to say, that the testimony introduced did not warrant any such conclusion, and we are unwilling to sanction the verdict returned by the jury in this cause.

Entertaining the views as herein expressed, it results in the conclusion that the judgment in this cause should be reversed, and it is so ordered.

All concur.