# THE STATE v. GEORGE DILTS, Appellant.

**Division Two, December 12, 1905.**

1. **APPELLATE PRACTICE: Errors Not Assigned in Motion for New Trial.** If a defendant desires to have a matter of exception reviewed in the appellate court, he must assign it as a ground in his motion for a new trial.

2. **EVIDENCE: Order of Introduction.** The order of the introduction of testimony rests largely in the discretion of the trial court; and this discretion was not abused in this case by the court's permitting a witness to testify for the State, in rebuttal, that she did not make the statements to defendant's witnesses which were testified to by them, although she had made some reference to said statements in her examination in chief.

3. **INSTRUCTION: Testimony of Defendant.** The following instruction held proper: "The court instructs the jury that the defendant is a competent witness in his own behalf, and his testimony is to be weighed by the same rules that govern the testimony of other witnesses, but in passing upon the weight to be given his testimony the jury may take into consideration the fact that he is the defendant in the cause, and his interest in the result of the trial."

4. **RAPE: Instruction.** An instruction which told the jury that before they could find defendant guilty they must find that there was some degree of entrance of the private parts of the prosecutrix, and that they must find that she manifested the utmost reluctance, was not erroneous, especially when considered in connection with instructions given for defendant.

5. ———: **Corroboration of Prosecutrix.** There is no rule of law forbidding the jury to convict one of rape on the uncorroborated testimony of the prosecutrix.

6. ———: **Sufficiency of Evidence.** Evidence held sufficient to justify the jury's verdict finding defendant guilty of rape.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

AFFIRMED.

State v. Dilts.

*J. H. Whitecotton, J. D. Dale, T. T. Rodes, W. W. Barnes* and *T. P. Bashaw* for appellant.

(1) It was error to permit Mrs. Reed to testify in rebuttal to matters she had gone over in chief. (2) Instruction 4, given by the court of its own motion, is erroneous, in that, on account of the arrangement of its clauses it gives undue prominence and significance to the fact that defendant was testifying in his own behalf. State v. Boyd, 178 Mo. 14. (3) Instruction 5½, given by the court of its own motion, does not employ the words in universal use in stating the elements of the crime of rape. (4) Defendant's motion for a new trial should have been sustained for the reason, among others, that the verdict is against the evidence in the case, and, upon the whole case, was the result of the prejudice and bias of the jury.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) Instruction 4 told the jury that the defendant was a competent witness, but that his interest in the case could be taken into consideration, etc. State v. Knock, 142 Mo. 523. (2) Instruction 5½ properly defined the crime of rape and gave the jury the test by which they were to determine whether such a crime had been committed. State v. Boyd, 178 Mo. 10. (3) While some reference was made by Mrs. Reed to conversations with the witnesses in her evidence in chief, yet the State was entitled to have this witness testify in rebuttal that she made no statements to defendant's witnesses of the nature as testified to by said witnesses. Besides, the order of testimony is a matter that must necessarily be left largely to the judgment of the trial court; and, in this instance, there was no abuse of that discretion. State v. Murphy, 118 Mo. 15; State v. Buchler, 103 Mo. 203. (4) The evidence was sufficient

to justify the jury in convicting the defendant of the crime charged. State v. Wilcox, 111 Mo. 575; State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496; State v. Williams, 186 Mo. 128.

GANTT, J.—At the December term, 1903, of the circuit court of Monroe county, Missouri, the prosecuting attorney of said county filed the following amended information:

"State of Missouri, County of Monroe. ss.

"State of Missouri, Plaintiff,

vs.

"George Dilts, Defendant.

"In the Circuit Court of Monroe County, Missouri, December term, 1903.

"And now at this day comes James P. Boyd, prosecuting attorney of and within the county of Monroe and State of Missouri, and files herein his amended information in this cause, leave of court having been first had and obtained for that purpose, and under his oath of office informs the court that George Dilts, on the tenth day of August, in the year of our Lord nineteen hundred and three, at and in the said county of Monroe and State of Missouri, in and upon the body of one, Minnie F. Whittaker, a female, unlawfully, violently, and feloniously, did make an assault, and her, the said Minnie F. Whittaker, then and there, unlawfully, forcibly and against her will feloniously did ravish, forcibly rape and carnally know, against the peace and dignity of the State.

"JAMES P. BOYD,

Prosecuting Attorney.

"James P. Boyd, prosecuting attorney of and within and for the county of Monroe and State of Missouri, as aforesaid, being duly sworn, on his oath states that the allegations, matters and facts in the foregoing information are true to the best of his knowledge, information and belief.    JAMES P. BOYD.

"Subscribed and sworn to before me, this 21st day of December, 1903.

"JAMES H. HILL,
Clerk of the circuit court of
Monroe county, Missouri."

At the April term, 1904, of said court, the defendant was put upon his trial and convicted of rape and his punishment assessed at five years' imprisonment in the penitentiary. After unsuccessful motions for a new trial and in arrest of judgment, the defendant appealed to this court.

The testimony on behalf of the State tended to prove that the prosecutrix, Miss Whittaker, was twenty-one years of age and was living with and in the employ of Mr. and Mrs. Zeno Reed, near Victor, in Monroe county, Missouri, in the capacity of a domestic, assisting Mrs. Reed in the housework. Mr. Reed's home was about five miles from that of the parents of the prosecutrix. The prosecutrix and the defendant, George Dilts, had known each other for about three years and for some time prior to the alleged offense he had been paying her marked attentions. The father had objected to these attentions and forbade them. On the afternoon of the day of the alleged rape the prosecutrix accompanied the defendant in a one-horse buggy from the home of her employer, Mr. Reed, to Mr. Geery's, about six miles distant. It appears that they left Mr. Reed's house about seven o'clock and spent the evening at Mr. Geery's and returned to Reed's that night. It was on their return trip that night that the crime is charged to have been committed. The testimony tends to show that they left Geery's about ten o'clock. According to the evidence of the prosecutrix, the defendant insisted upon her taking a drink of whiskey during the drive home; but she refused to do so, and he tried to force her to do so, and in so doing spilled some of the whiskey on her clothing. The evidence tended to show that the prosecutrix at this same

time was on friendly terms with a young man by the name of Armstrong. During this return trip the defendant began abusing and cursing Armstrong and told her if he ever heard of her going with Armstrong he would kill her. The testimony tends to show further that along the road from Geery's to Reed's there were some fourteen houses. Having refused to drink with him when he first asked her, they drove on until they reached Mr. Scobee's, when he again asked her to drink and she again refused, and he said he guessed he would make her drink and put his hands in his hip pocket. When they reached the gate in front of Mr. Ketterly's house, he again stopped and asked her to drink and she refused, but he took a drink, and they drove on. She testified that she then begged him to take her home, and they drove on in a slow walk until they reached Mr. Pugh's place, where he stopped the buggy and tried to force her to drink from the bottle. The defendant denies having any whisky at all with him. After defendant had threatened prosecutrix about going with Armstrong, according to her evidence, he attempted to raise her clothes and take liberties with her person, but she prevented him from doing so. He then requested her to have intercourse with him. When they reached a point near the farm of William Francis the defendant attempted to and finally succeeded in pulling her out of the buggy. In the scuffle her arms were bruised and hurt and her clothing torn and her dress badly soiled. She testified that she resisted defendant all she could and screamed at the top of her voice, but the defendant grabbed her hands and succeeded in having sexual intercourse with her. Prosecutrix then attempted to walk home but was forced by defendant to get into the buggy and ride to Mr. Reed's where they separated. Prior to separating defendant told her he would kill her is she ever told what he had done. The prosecutrix reached the home of Mr. Reed about two o'clock in the morning and retired to

her room and tried to sleep. About five o'clock that morning Mrs. Reed came to her room and found prosecutrix greatly distressed, crying and almost hysterical. Prosecutrix then made complaint to Mrs. Reed that defendant had raped her during their drive from Geery's and showed Mrs. Reed her underclothing which was torn and bloody. Word was sent that day to the father of the prosecutrix, who lived some five miles distant, and he drove to Paris and reported the facts to the prosecuting attorney, and the defendant was arrested that evening. The day after this alleged assault a lady's comb was found near a tree in front of the Francis farm and was identified as belonging to the prosecutrix. The prosecutrix's mother testified to the smell of whisky on her daughter's dress the day after the commission of the alleged crime, and also to the torn and soiled condition of her underclothing. Three physicians made an examination of the prosecutrix on August 14, 1903, and two of them testified they found bruised places and contusions on her limbs, and her private parts bloody, inflamed and tender. They testified further that there had been a penetration of recent occurrence and bloody water was exuding at the time of their examination.

On the part of the defendant, Mr. John Hurd testified that he passed defendant and the prosecutrix that night near the farm of Mr. Pugh—he was going east while they were headed west, and he rode to one side to let them pass. He described their position in the buggy when he first saw them as "Laying down, as near as two people could be in a buggy, the buggy top was back, laid down; they were lying back in the buggy;" that the defendant had his left arm around prosecutrix's neck, but he did not notice what he was doing with his other hand; that as they passed him the defendant raised up and sat upon the seat but she lay still until they had passed him some fifteen feet, when she raised up and sat by the defendant and appeared to

speak to him but the witness did not hear what she said. The defendant testified that she asked him if he thought the man recognized them. There was evidence on the part of the defendant that the house of Mr. Francis was about seventy-five yards from the road and about half a quarter from the cross-roads, and a half a mile from Zeno Reed's, their destination. It was a clear, still night, the moon shining. There was also evidence that there was nothing to obstruct sight or sound between Crump's house and the cross-roads. Crump slept that night on his front porch on a cot and heard no cry or screaming; and when asked if he was easily awakened by noises or sounds, he answered, "fairly so." The testimony tends to show that Francis was at home that night and slept with the window open and did not hear the alleged screams or other noises, nor did his wife. Mrs. Francis did not remember whether the windows or door were open that night or not. Mrs. Reed did not hear any screams. There was testimony on behalf of the defendant that his character was good in the neighborhood in which he resided. On his direct examination, the defendant was asked by his counsel whether he had intercourse with the prosecutrix, and he answered that he did not but that he tried to in the buggy but did not because there was a man coming up on them, and after they passed Mr. Hurd he made no further attempt to have intercourse with her but drove on to Mr. Reed's, got out of the buggy and helped her out and sat on a fence about four rails high, and talked about half an hour and bade her good night, when she went into her room and he went home. He testified further that the prosecutrix made no objection to his attempt to have intercourse with her while in the buggy. He denied that she ever made any outcry either in front of Mr. Francis's house or at the cross-roads or anywhere else on that trip home that night. On cross-examination, he testified that after he and the prosecutrix left Mr. Geery's that night he stop-

ped to open a gate and made no further stop until they got in the branch near Mr. Pugh's and after he left that branch he never stopped until he reached Mr. Reed's residence. He testified that on that ride he had been hugging and kissing the prosecutrix and when they got to the branch at Pugh's he asked her to have intercourse with him and she consented. He further testified, however, that in his attempt to have intercourse with her, near Pugh's, there was probably partial penetration; in fact he knew that he partially succeeded; that after passing Mr. Hurd nothing more was said about having intercourse. .

It appears from the record that the first complaint filed by the prosecuting attorney in this cause charged the defendant with assault with intent to rape. This information was filed upon the information furnished prosecuting attorney by the father of the prosecutrix. There was no evidence impeaching the good character of the prosecutrix.

When the case was called for trial, the prosecuting attorney asked leave to recall a subpoena he had caused to be issued for three parties as witnesses for the State who were on a special jury panel for the trial of this cause. The court permitted him to recall the subpoena against the objection and exception of the defendant and to examine them as to their qualifications as jurors. But as to this last alleged error, it is not assigned as a ground in the motion for new trial, and, hence, it will not be necessary to notice it further. The instructions will be noted in the course of the opinion. Numerous errors are assigned for the reversal of the judgment.

I. The first ground of error relates to the action of the court in permitting the prosecuting attorney to recall the subpoena for the three jurors on the regular panel; but, as already said, this alleged error is not before us for review at this time, for the reason that it was not in the motion for a new trial. It was a matter

of exception, and, if the defendant desired to have the judgment of this court upon that point, it was clearly his duty to have made it a ground in the motion for new trial and have given the circuit judge an opportunity to review his action thereon. This is too well settled in this State to admit of discussion. [State v. Marshall, 36 Mo. 404; Ross v. Railroad, 141 Mo. l. c. 395, and cases cited.]

II. Error is also assigned to the action of the court in permitting Mrs. Reed to testify in rebuttal to matters she had already testified to in chief. The testimony related to certain conversations which it was claimed she had with certain of the defendant's witnesses. While some reference was made to the said conversations in her evidence in chief, the State was entitled to have her testify in rebuttal that she made no such statements to the defendant's witnesses as testified to by them. Moreover, the order of testimony is a matter that must necessarily be left in a great degree to the discretion of the trial court, and an examination of this evidence discloses no abuse of that discretion. [State v. Murphy, 118 Mo. l. c. 15; State v. Buchler, 103 Mo. 203.]

III. The court refused instruction No. 5 asked by the defendant and modified instructions Nos. 3 and 4 as prayed by the defendant. No exception was taken to the action of the court in thus modifying and refusing the instructions as asked, and, hence, the action of the court is not before us for review as to those instructions. While the instructions given by the State of its own motion were assigned as error in the motion for new trial, only two of said instructions are challenged in the brief of the defendant and in the oral argument of his counsel in this court, to-wit, instruction No. 4 and instruction No. 5½. Instruction No. 4 is in these words: "The court instructs the jury that the defendant is a competent witness in his own behalf, and his

191 Sup—43

testimony is to be weighed by the same rules that govern the testimony of other witnesses, but in passing upon the weight to be given his testimony the jury may take into consideration the fact that he is the defendant in the cause, and his interest in the result of the trial.'' The objection to · this instruction is not new in this court, but in the form in which it is given it has been substantially approved by this court in a number of cases. [State v. Cook, 84 Mo. l. c. 46; State v. Maguire, 69 Mo. 197; State v. Zorn, 71 Mo. 415; State v. McGinnis, 76 Mo. 326; State v. Young, 105 Mo. l. c. 638 and 639.] There was no error in this instruction. Instruction No. 5½ is in these words: ''The court instructs the jury that if they find from the evidence in the cause beyond a reasonable doubt that at any time within three years next before the 21st day of December, 1903, at the county of Monroe, in the State of Missouri, the defendant did then and there ravish and carnally know the prosecutrix, Minnie Whittaker, forcibly and against her will, then in such case the jury will find the defendant guilty of rape as charged in the information, and assess his punishment at imprisonment in the penitentiary for a term of not less than five years or at death. The court further instructs the jury that before they can find the defendant guilty of rape as charged, they must find from the evidence that there was some degree of entrance of the private parts of Minnie Whittaker by the private parts of the defendant, and that defendant used force upon her to accomplish it, and that she manifested the utmost reluctance thereto, and did not consent to the same, and made such resistance as she was capable of to prevent it; and whether or not that consent was or was not given may be inferred from all the facts and circumstances given in evidence.'' This instruction is criticised because the court used the expression ''That there was some degree of entrance of the private parts,'' etc., instead of using the word penetration; and because it further

says that the jury must find that the prosecutrix manifested the utmost reluctance. We think there is no merit in these assaults upon the instruction, especially when taken in connection with instructions numbered 1, 2 and 6, given on behalf of defendant and at his request. The instructions on the whole were exceedingly favorable to the defendant.

IV. Finally, it is insisted that the verdict of the jury is so manifestly the result of prejudice and bias and so absolutely without credible evidence upon which to base it, that this court should reverse the judgment. It is fundamental that this court will not enter upon an examination of the mere weight of evidence and usurp the province of the jury in that regard; but, if there is no evidence, or if, the evidence all taken together, the verdict is clearly the result of prejudice, passion or partiality, this court will interfere and set aside the verdict. [State v. Primm, 98 Mo. l. c. 373, 374, and cases cited.] In State v. Marcks, 140 Mo. 656, the necessity of corroboration of the testimony of a prosecutrix in a case of rape was considered by this Court in Banc, and the conclusion was reached that at common law there was no absolute rule of law requiring corroboration in prosecutions of rape as is the case in treason or perjury or seduction under our statutes. And the rule in this State is well settled that there is no rule of law which forbids a jury to convict one charged with this crime on the uncorroborated testimony of the prosecutrix if the jury are satisfied beyond a reasonable doubt of the truth of her testimony. Lord Hale, in his Hale's P. C., 633, stated the rule to be, "The party ravished may give evidence upon oath, and is in law a competent witness; but the credibility of her testimony, and how far she is to be believed, must be left to the jury, and is more or less credible according to the circumstances of fact that concur in that testimony." In the record before us, the fact that the defendant on the night of the alleged rape was alone with her at least

as late as midnight on the public highway between
Mr. Reed's and Mr. Geery's was clearly established,
not only by the prosecutrix but by the defendant him-
self and Mr. Hurd.  That the defendant was possessed
of the desire to have illicit intercourse with the pros-
ecutrix and that he made an attempt to do so on that
evening is established out of his own mouth.  The char-
acter of the prosecutrix for chastity and veracity
stands entirely unimpeached anywhere in the record,
save by the testimony of the defendant himself.  If the
testimony of the prosecutrix was believed, as it evi-
dently was, by the jury, the defendant on the way home
that night began by making indecent proposals to her
and by attempting improper liberties with her person,
and in pursuance of his purpose attempted to have her
drink whisky with him.    According to her evidence,
when she had resented and rejected his indecent pro-
posals, he forcibly pulled her from the buggy and forc-
ibly outraged her.  She testified that she resisted with
all the power that she could command and that he only
succeeded after she had resisted to her utmost.  The
jury saw her demeanor upon the witness stand,  her
manner of testifying, and accepted and believed her
testimony.  This being true, there could be no doubt
whatever of the sufficiency of the evidence.  While the
charge of rape is an accusation easy to make, it is also
hard to be proved.  In the very nature of the case it is
committed when only the party who commits the rape
and his victim are by themselves.  It is not a crime
likely to be attempted in the presence of other wit-
nesses or in a public place.  Much stress is laid in
the argument upon the fact that there were residences
near the road where this alleged crime was committed,
but this also was a question for the jury to consider.
It occurred at the dead hour of night when the occu-
pants of these residences along the road were sound
asleep.  It is also insisted that her failure to make com-
plaint immediately upon her reaching the Reed home

that night is of itself sufficient to show the bad faith of this prosecution. In State v. Marcks, supra, this phase of the case also was fully examined in the light of the authorities, and it was there held that the delay to make complaint may be explained by showing that it was caused by threats or undue influence of the prisoner. It is in truth a question purely of fact to be determined by the jury, and how much the delay in making the complaint ought to weigh against the prosecution must depend upon the circumstances of each particular case. When it is considered that the question as to the time of night when the defendant and the prosecutrix reached Mr. Reed's home that morning was one also for the jury to determine, and if the jury believed and found that they did not reach Reed's home until two o'clock in the morning, the fact that this girl did not at once arouse the whole family but went to her room and did not tell anyone until the next morning, about five o'clock, can it be said, as a matter of law, to be such unreasonable delay as to impeach her veracity and utterly discredit her? It must be remembered that she was not at the home of her father and mother and that her natural instincts would cause her to hesitate as to what she should do; but when she does, immediately upon meeting Mrs. Reed as early as five o'clock the next morning, make a full disclosure of the outrage that had been committed upon her and is found in a state verging upon hysteria, it is too clear for argument that this was a circumstance for the jury to weigh in making up their verdict. There is another circumstance to be considered in regard to the testimony of the prosecutrix—her relation to the defendant prior to this night and up to the time of this assault was of the most friendly, and we may even say affectionate character. No motive was shown why she should deliberately perjure herself or why she should desire to have the defendant unjustly convicted unless to punish him for the outrage upon her. The same

may be said in regard to the evidence of Mrs. Reed and Mrs. Whittaker. No attempt was made to impeach their reputation as good women. The mere fact that there was some evidence contradictory of that given by them is no ground for the interference of this court. All these contradictions and seeming contradictions were matters peculiarly within the province of the jury. The jury could believe or disbelieve their testimony and they could reject and disbelieve the testimony of the witnesses who contradicted them. Likewise the evidence of the defendant was peculiarly a question for the jury to weigh. When he took the witness stand he positively asserted that he did not have intercourse with her on that night; afterwards he admitted he tried to, and that he partially succeeded and used a little force to accomplish this purpose. With this evidence before them it cannot be said that the jury were without corroborative evidence of that of the prosecutrix. The evidence places the parties together. Her evidence was plain, straightforward, to the fact that he ravished her on that evening. Her evidence was corroborated by the fact that her clothing was torn and the unquestionable evidence that her parts had been penetrated. This evidence was corroborated by the defendant's own testimony of his attempt to have intercourse with her on that night. But, evidently, the jury were brought to the point where his evidence must either be accepted or rejected—the account given by him of his efforts at copulation that night was wholly variant from the physical facts discovered by the physicians and by the condition of the torn clothing and lacerated parts. The jury saw fit and had the right to believe and accept the story of the prosecutrix as to the occurrences of that night, and it serves no good purpose to spread upon the reports of this court all the details of the testimony. We have read and carefully considered it, and in our opinion there was ample evidence to justify the jury in reach-

ing the conclusion which they did, and this last ground of error, to-wit, that the verdict is so contrary to the evidence and the weight of the evidence that the verdict cannot stand, must likewise be ruled against the defendant. There are some other minor points discussed in the brief; but, upon a review of the whole record, we find no reversible error, and the judgment of the circuit court must be and is affirmed.

All concur.