FLORA J. LINVILLE, Respondent, v. DAVID R. GREEN, Appellant.

Kansas City Court of Appeals, May 6, 1907.

1. **LASCIVIOUS ASSAULT: Rape: Pleading: Merger: Splitting Demand.** The doctrine of merger in criminal law that there can be no conviction for an assault or attempt to commit a crime when the crime itself is accomplished has no application to a civil action growing out of the accomplished crime; the injured party has a civil suit to enforce her individual right and may enforce it to its full extent or carve out of the greater right one of less extent though she may not sue for the greater wrong after recovery for the lesser.

2. ———: ———: ———: **Petition.** A petition is held sufficiently broad to carry not only the initiatory assault but the accom-

125 App—19

plished rape, though somewhat indefinite which might have been remedied by another to make more definite, but is good after verdict.

3. ——: ——: ——: Resistance: Assent. Though a woman may resist with all her strength the initiatory lascivious assault yet if she finally consented to the accomplished rape she cannot recover, since that condones all that had gone before.

4. ——: ——: ——: ——: ——: Evidence. Evidence relating to an alleged assault and rape is reviewed and held sufficient to send the case to the jury, and the plaintiff's testimony is held not to contradict the physical facts shown to exist, and the burden is on the defendant to show that the physical facts did contradict plaintiff's testimony.

5. ——: ——: ——: ——: ——: ——. Evidence relating to the plaintiff's conduct in connection with the alleged assault and subsequent thereto in regard to outcry and disclosure and fear from threats is reviewed and held insufficient to take the case from the jury.

Appeal from Ray Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

AFFIRMED.

*J. E. Ball, J. M. Davis & Sons* and *Lavelock & Kirkpatrick* for appellant.

(1) The petition was to recover damages for assault with intent to rape, but plaintiff testified that she was raped. Now, whether this testimony was with or without probative force in view of the surroundings, it was insufficient to sustain the cause of action declared on. It was error to refuse the demurrer to the evidence. 1 Bishop's Crim. Law (7 Ed.), sec. 786; 20 Am. and Eng. Ency. Law (2 Ed.), pp. 603, 605; R. S. 1899, sec. 2361; State v. White, 35 Mo. 500; State v. Scott, 172 Mo. 545. (2) The evidence of plaintiff, however, was too improbable, too inherently weak, too inconsistent with human promptings and too utterly devoid of probative force to constitute substantial evidence, which is essential to sustain a verdict. The re-

fusal of the trial court to direct a verdict for defendant, under such evidence, was reversible error. State v. Burgdorf, 53 Mo. 65; Robinson v. Musser, 78 Mo. 153; Champagne v. Hamey, 189 Mo. 709; Monroe v. State, 13 So. (Miss.) 884; Price v. State, 36 Tex. Cr. Rep. 143, 35 S. W. 988; Topolanck v. State, 40 Tex. 160; Mares v. Territory, 65 Pac. (N. M.) 165; People v. Hulse, 3 Hill 309; State v. Connelly, 57 Minn. 482, 59 N. W. 479; State v. Chapman, 88 Ia. 254, 55 N. W. 489. (3) Plaintiff's statements of the facts constituting her cause of action being wholly without corroboration either of facts, circumstances or testimony, and being inconsistent with the physical facts, opposed to human experience, and her conduct at and about the time of the commission of the alleged offense being so inconsistent with the facts sworn to and wholly improbable, and the conceded facts being more than sufficient to destroy the probative force and effect of plaintiff's statement as to the violence used, this court will treat such statements as untrue. Spohn v. Railway Co., 87 Mo. 74; Nugent v. Milling Co., 131 Mo. 241; Payne v. Railroad Co., 136 Mo. 362; State v. Fannon, 158 Mo. 149; Hook v. Railroad Co., 162 Mo. 569; Spiro v. Transit Co., 102 Mo. App. 265.

*James L. Farris, Jr., George W. Crowley* and *Maurice G. Roberts* for respondent.

(1) The court properly refused to give the peremptory instruction. The proof was strong, cogent and conclusive that the defendant took hold of plaintiff with a lustful and immoral purpose and against her will, i. e., was guilty of simple assault, as alleged in the petition. State v. White, 52 Mo. App. 287; State v. Fulkerson, 97 Mo. App. 599; State v. Scholl, 130 Mo. 401; Goodman v. State, 60 Ga. 509; Thompson v. State, 43 Tex. 583; Commonwealth v. McKie, 67 Mass. 61; 2 Am. and Eng. Ency. Law (2 Ed.), page 975, and

numerous authorities there cited; Newell v. Whitcher, 53 Vt. 584. (2) The authorities cited by appellant on the question of the sufficiency of the evidence are not applicable to this cause for the reason that they are all cases of rape, but this is an action for simple or sometimes called lascivious assault. (3) Appellant's insistence that the peremptory instruction should have been given because of the doctrine of merger is without foundation, for the doctrine of merger applies only to criminal cases, and even as to criminal cases it has been abrogated in this state. 20 Am. and Eng. Ency. of Law (2 Ed.), p. 606; R. S. 1899, sec. 2368.

JOHNSON, J.—The cause of action pleaded in the petition appears in the allegations "that on or about the twenty-fifth day of October, 1903, the defendant unlawfully, willfully, maliciously, lasciviously and licentiously made an assault upon plaintiff and did then and there rudely, wrongfully, lasciviously and maliciously touch, beat, injure, pull, jerk and throw down the plaintiff upon the floor and otherwise forcibly and wrongfully injure and mistreat the plaintiff, . . . that the assault and battery aforesaid committed by the defendant upon the person of the plaintiff was wanton and malicious." For the injuries thus inflicted, plaintiff seeks to recover both compensatory and exemplary damages. The answer is a general denial. A trial of the issues resulted in a verdict and judgment in favor of plaintiff in the sum of thirteen hundred dollars actual and seventeen hundred dollars exemplary damages, and the case is here on defendant's appeal.

The most important questions presented by defendant for our consideration arise from his contention that the instruction in the nature of a demurrer to the evidence requested by him should have been given. In disposing of these questions, we find it necessary to fully state the disgusting facts appearing in the record.

Plaintiff, who at the time of her injury was nineteen years old and unmarried, had been living with her father in the little town of Elmira in Ray county. Her mother had been dead for a number of years and the family consisted of her father, a brother, and herself. The father was a section laborer on the railroad running through the town, and plaintiff performed the duties of his housekeeper. She was shown by the great weight of the evidence to be a girl of irreproachable character and she was received into the respectable society of the community. Defendant, a married man between forty-five and fifty years of age, lived on a farm in the vicinity of Elmira, and had known plaintiff from her childhood. He was quite an extensive landowner and among his possessions owned a farm known as the "Cummings farm" which was four or five miles distant from his home place. The evidence of plaintiff shows that in March, 1903, defendant was very persistent and in the end successful in efforts to induce her father to rent a part of. this farm. Arrangements were made under which her father rented forty acres thereof and the dwelling-house situated thereon, and agreed to give defendant board and lodging. during such periods as the latter might find it necessary to be on the place in caring for the crops on the part of the farm not rented. Following this agreement plaintiff removed with her father and brother to the farmhouse. This house was situated about fifty yards from a public road which was not much frequented by travelers and the nearest neighbor lived about a half mile away. In August of that year plaintiff's brother died and, thereafter, the family consisted of plaintiff and her father.

Defendant visited the farm a number of times before the date of the injury, and on several occasions stayed over night, but was guilty of no improper conduct. At about half past seven or eight o'clock in the morning of October 25, and after plaintiff's father had

gone into the field to work, defendant arrived at the farm and entered the house while plaintiff was at work in one of the bedrooms which was on the first floor at the side nearest the road. Defendant, without saying anything to disclose his purpose, approached plaintiff, seized her and besought her to go with him into the adjoining room. She refused, begged him to unhand her and struggled with her might to free herself. Defendant, greatly overmatching her in strength, thereupon pulled her into the adjoining room and, firmly holding her, went to the window, drew down the shade and then to the door, which he fastened. Then pulling her nearer to the center of the room, he threw her down on her back and against her utmost efforts to free herself and her pleadings to him to desist, succeeded in accomplishing her ravishment. During the struggle plaintiff struck defendant in the face with her fist and cried aloud, but did not scream. There is no evidence to show that any bruises or laceration resulted from the encounter, or that her clothing was torn. But from the facts disclosed, it appears that defendant was powerful enough to hold her firmly pinned to the floor, while he employed both hands to undo her clothing and arrange it for his purpose. Defendant, with great ferocity of demeanor, threatened to kill plaintiff should she tell her father of the crime committed against her, and, greatly fearing the execution of this threat, she refrained from telling her father about it, and, having no mother or woman friend in whom to confide, bore her shame in silence. About a month afterward, defendant again visited the farm at a time when plaintiff's father was at work in the field, and again successfully assaulted plaintiff; and a third time in the February following, he made a like assault. It is unnecessary to recount the details of these repetitions of the offense. Suffice it to say that on the three occasions, plaintiff, according to her testimony, exerted herself to the last

degree to prevent the outrage, and was unwillingly over-
come by the greatly superior strength of her antago-
nist.    After the second assault, plaintiff became preg-
nant, and in March following, knowing her condition
and fearing to tell her father because of the threats of
defendant to kill her if she did, she informed defend-
ant of her condition.    Defendant proposed to her that
she accompany him to Kansas City at his expense for
the purpose of receiving medical treatment.    To this
plaintiff assented and telling her father that she re-
quired the services of a physician for lung trouble, ob-
tained from him a small amount of money to defray
her expenses to Excelsior Springs, where she proposed
to undergo treatment.    By prearrangement with de-
fendant, she met him at Excelsior Springs and the pair
proceeded to Kansas City where defendant took her
to a so-called hospital and paid the doctor in charge
a fee of fifty dollars to produce an abortion upon her.
The operation very nearly cost the plaintiff her life, and
she was confined in the hospital for about two weeks.
When she had recovered sufficiently, she returned to her
home.    In the meantime, her father becoming greatly
alarmed at her prolonged absence began to make in-
quiries concerning her whereabouts, and was informed
by defendant that he had seen her in Kansas City where
she was visiting some friends.    This statement did not
entirely allay the fears of the father, and he had begun
to search for her and was on the point of going to Kan-
sas City, when she returned.    Shortly thereafter, the
father was informed by a physician who was called to
treat plaintiff that an abortion had been performed on
her, and, following this discovery, plaintiff told him,
for the first time, of the great wrong defendant had
inflicted upon her.    Afterward, father and daughter
had an interview with defendant by appointment at
which the latter admitted having illicit intercourse with
plaintiff, but claimed it was with her consent and

charged that others had been the recipients of like favors. Plaintiff's father, in testifying about this conversation, said: "He began to talk around there and said that he just didn't deny it and if there was anything in sight, he always took hold — that is what his father told him to do." With this the interview closed, and this action followed.

The foregoing statement is drawn entirely from the evidence of plaintiff and as to the details of the three encounters the record presents no other evidence than the testimony of plaintiff herself. Defendant, in his testimony, denies, not only that he assaulted and ravished plaintiff, but that he ever had any sexual commerce with her or ever made any improper advances towards her. Further, he denies that he accompanied her to Kansas City or was in any wise, instrumental in inducing her to go there or that he had anything to do at all with the criminal operation that she says was performed upon her. He does admit having met her at the railway station when she arrived in Kansas City but declares the meeting was quite accidental and that he did not accompany her to a doctor's office nor know anything concerning her mission. A careful analysis of his testimony made in connection with the other facts and circumstances convinces us that the jury was right in rejecting it. It is not at all important that we should go into the details of that analysis, and we will content ourselves with saying that we join with the triers of fact in pronouncing the testimony of defendant to be a falsehood from beginning to end. Thus regarding it, we begin our consideration of the questions of law before us from the standpoint that plaintiff's evidence stands uncontradicted, and unless we find that evidence to be so intrinsically weak that it fails to sustain the charge made in the petition, we shall give our sanction to the action of the trial court in overruling the demurrer to the evidence.

Before discussing the strength of the evidence to sustain a cause of action predicated on rape, we will dispose of a question of pleading raised by defendant. It will be noticed that the petition does not contain the allegation that plaintiff was ravished except inferentially. The gravamen of the offense charged is a lascivious and malicious assault during the course of which plaintiff was beaten and thrown upon the floor and "otherwise forcibly and wrongfully injured and mistreated." Defendant argues, in effect, that as plaintiff testified that the assault culminated in rape, she cannot recover on a cause of action founded on assault alone, since on the showing that a crime so heinous had been committed, the lesser offense of the preliminary assault became merged into the greater.

Section 2361, Revised Statutes 1899, provides: "No person shall be convicted of an assault with an intent to commit a crime or of any other attempt to commit any other offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault or in pursuance of such attempt." In State v. Scott, 172 Mo. 536, a criminal case, the Supreme Court in construing this statute held that where "the only evidence of an assault to commit a rape is that which shows the crime was fully perpetrated, it falls within section 2361 Revised Statutes 1899, and it is error to submit the question of assault with intent to commit a rape." But without going into a discussion of the subject of a merger in criminal jurisprudence of a lesser crime into a greater where the former is initiatory to the latter, and conceding for argument that defendant in a criminal action could not have been convicted of the offense of an assault with intent to commit rape, on proof showing the consummation of the guilty intent, we do not perceive that the doctrine of merger can have any application to a civil action predicated on a criminal wrong.

The State is a party to criminal actions and the people of the State have a direct and vital interest in the infliction of sufficient punishment on criminals who commit grave crimes. It will not do to permit a man who has committed murder to escape with the punishment to be meted out to one whose crime is an assault with intent to commit murder. Nor will it do to permit one who has committed the abhorrent crime of rape to suffer no greater punishment than would have been his desert had he failed in the accomplishment of his obscene purpose. Such an inadequate execution of the law, instead of having a tendency to hold in check the criminal classes, would but encourage them to increase their depredations, since they could not do otherwise than to regard the administration of justice with contempt. But the State is not a party to this action, either actually or theoretically. This is a civil suit to enforce an individual right. The cause of action which inured to plaintiff from the act of her assailant is her own property. She may enforce it to its full extent or she may, if she chooses, carve out of the greater right one of less extent and enforce that, but if she chooses thus to forego a part of her right, she cannot, after judgment, make that part the subject of an independent action because of the rule prohibiting the splitting of a cause of action. There is no reason in law or logic for saying that plaintiff could not sue for and recover damages resulting from a simple assault, though the facts entitled her to a much greater right of recovery.

But has plaintiff failed to incorporate her entire cause of action in the averments of her petition? We think not. She did not allege in so many words that she had been raped by defendant, but after stating that he lasciviously and licentiously seized and injured her and threw her to the floor, she charged that he "otherwise forcibly and wrongfully injured and mistreated her." This allegation, though indefinite, evidently was

intended to allege subsequent mistreatment to that of throwing her to the floor. Defendant would have been entitled, on motion, to have had this charge made more definite and certain, but he filed no such motion and after judgment the allegations of a petition which has passed unchallenged should be construed in favor of the plaintiff and if by a fair intendment or inference they will support the cause of action proven, there is no variance between pleading and proof. Applying this rule to the case in hand, we must hold that the allegations are sufficient to support a cause of action founded on rape.

From the argument made by counsel for plaintiff, it appears that their failure to specifically charge the commission of the crime of rape was the result of a somewhat peculiar misconception of the principles of law applicable to the facts of the case. Fortunately for plaintiff this error does not appear in the instructions given to the jury and as we have shown, the defect it injected into the petition amounted to no more than an irregularity which was cured by verdict. Counsel appear to think that despite the fact that the encounters between plaintiff and defendant in each case resulted in sexual union, she could have a cause of action though it might further appear that the final act was done with her consent. They would separate the conduct of defendant into two parts: The first consisting of the employment by defendant of physical force to reduce plaintiff to submission and the second of the ensuing copulation. Authorities are cited to sustain this novel position of which the cases of State v. White, 52 Mo. App. 285, and State v. Fulkerson, 97 Mo. App. 604, are fair examples. In neither of these cases did the wrongful act of the defendant exceed that of simple assault. The proof failed to show an assault with intent to commit rape within the legal definition of that term, and we held, in effect, that where a man with a

lascivious purpose even touches a woman against her will such act will constitute an assault though the actor be found to have been free from any intent to follow up the assault with sufficient physical force to overcome all resistance to his desire. So in the case at bar, had defendant desisted after his seizure of plaintiff in the bedroom, nevertheless, he would have been guilty of an assault upon her which would have afforded her a right of action for the damages sustained. But wrongful as it was for defendant to attempt to have sexual relations with plaintiff, if at any time during the encounter she willingly or even passively surrendered to his embraces, there could be no assault, however strong may have been her resistance to his initial advances. And should we find that plaintiff failed at any stage of the struggle to do all that reasonably could be expected of a modest woman zealous in the protection of her virginity, she cannot separate the lascivious conduct of defendant into different stages and plead a cause of action upon one of them. Consent to the final act would condone all that had gone before.

Our inquiry, therefore, has come to this question: "Does the evidence of plaintiff show that throughout she was coerced and at no time became a willing victim? Courts have gone very far, indeed, in heeding the admonition of Lord HALE that the crime of rape "is an accusation easily made, hard to be proved, and still harder to be defended by one never so innocent." And it is to be feared that many criminals guilty of this odious crime have escaped punishment because of a too zealous following of that advice. In nearly every case proof of the crime, in the very nature of things, must depend solely on the testimony of the outraged woman, and it appears in some of the reported cases that appellate courts have been far more intent on fashioning a mountain of conclusion out of some mole hill of an assumed improbability in the testimony of the woman than they

have been in punishing this the greatest of all crimes that can be perpetrated against virtuous womanhood. We grant that great care should be exercised to avoid giving effect to false accusations of this character, since the temptation must be very great to a woman who has willingly gone astray to attempt to excuse her sin when it no longer can be hidden by charging that she was outraged against her will. But the presence of such a lie is readily discoverable and that it may be invoked affords no reason for the application to this class of cases of any different rules of evidence or different character of proof than those which obtain in other cases. There is no reason why the charge of rape should not be sustained by the testimony of the woman alone, and where it appears that her statement of the facts of the occurrence is not inconsistent with the physical facts, and with the well recognized rules of human conduct, the evidence should be held to be substantial, and possessing substance, the determination of the ultimate fact is a matter peculiarily within the province of the jury. Where the testimony of the woman may be harmonized with natural law and fact, appellate courts have no more right to pass on the weight of the evidence or the credibility of the witnesses in cases of this nature than in other cases arising in tort. These principles are fully recognized in the most recent decision of the Supreme Court to which our attention has been called (Champagne v. Hamey, 189 Mo. 709) and may be said to spring from the dictates of an enlightened and just morality.

The positive declaration of plaintiff is that her ravishment was accomplished against her will and in spite of her utmost resistance. Defendant argues that this positive declaration must be rejected because it is inconsistent with the physical facts and circumstances under which the act was accomplished. It is said that a virtuous woman, actuated by the sole purpose of defending her honor, could not have been dragged around

Linville v. Green.

the room while her assailant was pulling down the window shades and locking the door, nor could he release both of her hands after he had thrown her to the floor and use his own in the arrangement of the clothing, nor would she have failed to scream at the top of her voice nor refrained, notwithstanding his threat to kill her, from speedily disclosing to her father the awful crime that had been committed upon her.

Further, it is said that an actual and not simulated resistance by plaintiff would have left some marks of the struggle, such as wounds or bruises on her body, or torn clothing. Defendant cites numerous cases in which the accused has escaped in which some such act of omission or commission on the part of the woman has been held to show conclusively that she did not offer the measure of opposition to be expected of a virtuous woman, but in all cases where the clear and positive declaration of the witness is to be weighed in the balance with natural laws and facts, the solution of the question as to whether the spoken testimony possesses any probative value is to be governed and controlled by the facts and circumstances peculiar to the given case, and, obviously, what would appear in one situation to be an act of acquiescence, under different circumstances might wear an entirely different aspect. In Robinson v. Musser, 78 Mo. 153, the woman, who was sleeping in bed with a daughter of her alleged assailant, permitted him, while she was awake, to lift her from the bed and carry her to another part of the house, without making any outcry. She said she did this because she thought it would create a great scandal and she felt that she was mistress of the situation.

Enough of an outcry to awaken the daughter would have saved her honor, and the Supreme Court very properly thought she was far too complaisant and considerate for her own good. And in another case (Champagne v. Hamey, 189 Mo. 709) the prosecuting witness per-

mitted herself to be "ravished" while people were awake in an adjoining house ninety feet away, who could easily have been alarmed had she screamed. In that case, the Supreme Court would not permit the charge of rape to stand. But where the encounter occurs in an isolated place, without any likelihood that an outcry, however vigorous, will bring relief, we do not perceive why a woman 'thus assailed should scream, though, perhaps, it would be a very natural thing for her to do. For practical purposes, she would better save her breath for the physical struggle. In the present case, with her father outside the range of her voice and the nearest neighbor half a mile away, it would be harsh, indeed, should we pronounce plaintiff culpable because she failed to scream.

And, as to the apparent ease with which defendant overcame her resistance, the learned trial judge and the jury who had both parties before them and could compare their strength were better able to judge of the reasonableness of plaintiff's statement than we are. A powerful man would have no difficulty in dragging around a small weak woman nor in throwing her to the floor, nor in holding her there pinned by the weight of his body while he used his hands to uncover her person. Her weak blows with her hands and struggles to free herself hardly would be noticed by him, and we apprehend that the act of sexual union could be accomplished with little difficulty against the utmost resistance of the woman. On the other hand, a strong, vigorous woman who evenly matched her assailant in strength could not be ravished against her will without first being overcome by severe physical injury, and in such case the evidences of a struggle would be apparent. The record in this case does not disclose the comparative size and strength of the two parties, but defendant is asking us to disbelieve the testimony of plaintiff because of its inconsistency with the physi-

cal facts, and it is incumbent on him to demonstrate the falsity of the facts stated by plaintiff as the facts themselves, in the absence of such demonstration, bear the stamp of verity and are sufficient to constitute substantial evidence to go to the jury. We will assume that the physical appearance of the parties was such that the jury was justified in believing that the disparity in their strength was so great defendant could do what plaintiff said he did.

And, further referring to the failure of plaintiff to disclose to anyone the occurrence of the crime, the most that can be said of her conduct in this particular is that it was a circumstance to go to the jury. In some of the cases to which our attention has been called, it has been treated as a suspicious circumstance against the accusation, but we know of no case where the testimony of the prosecuting witness has been rejected solely on this ground. And in those cases where her conduct has been criticised, the facts and circumstances were such that they failed to show the presence of a motive strong enough to overcome the natural inclination to disclose her misfortune which every virtuous woman is supposed to possess. It must be remembered that plaintiff had no mother nor any other woman sufficiently close in her confidence and friendship in whom to confide. She says she really believed defendant would carry out his threat to kill her if she told her father. The brutal crime he committed upon her certainly warranted her in believing he would go to any length in the violation of law, human or divine, to carry out his purpose. She was afraid of him, and whether or not her fear was well founded, we are convinced it was actual, and that her lips were closed solely by stress of the greatest terror. It will not do to say that because the threat in reality was vaporous and impotent, she should have possessed the judgment and courage to ignore it. She was young and innocent, hardly more than a child in intelligence

Linville v. Green.

and she could not be expected to know the ease and security with which the machinery of justice could be set in motion for her protection and for the punishment of her wrong. Fear engendered by fancied though unreal danger is no less terrifying than that produced by actual peril. We are endeavoring from all the facts and circumstances of the occurrence to search the conscience of plaintiff to ascertain if she was actuated by virtuous motives or their antonym. And the question is not whether all of her acts were those to be expected from a person of mature years and judgment, but whether they comport with the instinctive impulses of chastity in a person of her years, situation in life and experience. If they may be reasonably harmonized (and we think they may) with virtuous motives and impulses, she is entitled to have the jury pass on her conduct as a question of fact.

On the hypothesis that plaintiff suffered under great fear produced by defendant's threat, the existence of that condition of mind made possible the repetitions of the assaults on her honor. The exigencies of her life compelled her to spend long hours at home in complete isolation. She was where she had the right to be, and to her mind she was in her last place of refuge, and there held as fast in the power of defendant as she would have been had she been immured by him within the walls of a stronghold.

And when the results of defendant's act foretold the certain discovery of his crime and her shame, her fear naturally might drive her to inform him of this new impending calamity and to submit herself to his masterful control. For can it be doubted that the fear of her assailant, strong enough to compel a virtuous woman to hide her shame in the first instance, would in the end lead her in a measure to rely on his protection when the discovery of her ruin meant also the discovery

of his crime? Again must we judge plaintiff not by the standard to be applied to a person of mature years and judgment, but as a person of intellectual immaturity and inexperience who has been suddenly plunged by the greatest disaster into a maelstrom of whirling emotions and terrors. We will not condemn her in law because she may have acted injudiciously.

Finding, as we do, that her conduct was not necessarily inconsistent with the natural impulses of feminine modesty and virtue, let us see if her story finds corroboration in the physical facts and circumstances disclosed in the record. We consider the proof overwhelming that defendant, at his own expense, took plaintiff to Kansas City and there procured the performance of an abortion upon her. It is difficult to believe he would have done this had he not considered himself to be the father of the embryonic child, or that he would have done it had he believed plaintiff had been immoral with other men. Of plaintiff's chastity prior to defendant's intercourse with her, we are well convinced from a careful study of all the evidence. So that defendant is in this predicament: He was either the ravisher or the seducer of a young and innocent girl. We cannot say, as a matter of law, that the facts and circumstances conclusively disprove the theory of seduction, but they do more strongly tend to sustain the testimony of plaintiff than to support the argument that in the end she willingly submitted to defendant's advances. He was a married man, old enough to be her father. There never had been any amatory exchanges betweeen them, nor had there been any opportunity for love-making afforded. Of course, it is possible, but it is not reasonable, to suppose that in such case defendant could have made such a quick conquest of a virgin, for as a rule, the treasures of chastity are not so easily seized. The facts all tend to aid plaintiff's version of the offense, and we conclude the discussion of the demurrer to the evidence

with the observation that the triers of fact, in our opinion, made no mistake in giving greater credit to the testimony of this girl who, before the occurrence in question, had been unpolluted, than to the testimony of one for whom the best that can be said is that he was a married libertine who selected the young and innocent for the gratification of his lust. The demurrer to the evidence was properly overruled.

Objections are made to the instructions given the jury on behalf of the plaintiff, but we find them to be free from error. The case was fairly submitted to the jury.

Point also is made that a new trial should have been granted on the ground of newly-discovered evidence, but the showing made clearly discloses a lack of due diligence on the part of the defendant.

The judgment is affirmed. All concur.