MARIE HOLLOWAY, BY HER NEXT FRIEND, FAY HOLLOWAY, Appellant, v. WALTER KENNETH SHEPARDSON, Respondent, No. 43391—258 S. W. (2d) 656.

Division Two, June 8, 1953.

*Bamburg & Bogutski* for appellant.

16

*C. P. Junge, F. M. Brady* and *Edwin F. Brady* for respondent.

BOHLING, C.—Marie Holloway, by her next friend Fay Holloway, sued Walter K. Shepardson for $1,000 actual and $10,000 punitive damages arising out of an alleged indecent assault. The verdict and judgment were for the defendant. Plaintiff appealed and claims error in the admission of certain evidence and the giving of an instruction. Defendant contends error was not committed and that the plaintiff failed to make a submissible case.

Defendant bases his contention that plaintiff failed to make a submissible case upon plaintiff's failure to make outcry and failure to make complaint for three or four days. The issue calls for the evidence favorable to plaintiff.

Plaintiff married James Holloway January 1, 1951, and they lived at Warsaw, Missouri. She was reared at Avery, Missouri. She went to work for defendant, who practiced dentistry in Warsaw, as a receptionist and assistant on April 7, 1951. She was 17 years of age. Defendant and his family lived in an apartment above his office. He worked on some Thursdays but generally Thursday

was his day off. On Wednesday, April 25th, defendant informed plaintiff they would work the following day. Defendant came in on Thursday about 9:00 a.m. and gave plaintiff some instructions. Defendant returned about 11:30 and soon thereafter while she was between two tables in the laboratory, in a corner as she expressed it, defendant approached her, put his left arm around her, held her tightly and indulged in improper familiarities with her person; that is, the unfastening and lowering of her clothing to her waist and kissing her breasts.

Plaintiff testified that when defendant started to unbutton her dress she told him ''no,''; that she was ''scared'', did not know where defendant's wife was, did not know what to do, kept telling defendant ''no''; that she tried to scream and he put his hand over her mouth, and when he took it away, she started crying. She was crying and defendant helped her with her clothing. She walked out of the office and home. She regained her composure by the time her husband came home. This was her first experience. She was afraid to tell her husband, but had to make some explanation to him to quit work. She returned to work on Friday and Saturday. When defendant paid her about 5:00 p.m. Saturday, he started to unbutton her dress again. She was ''scared,'' started to cry, and managed to get away and go home.

Plaintiff and her husband drove to Kansas City Saturday night to visit plaintiff's parents and returned home Sunday evening. She did not mention the matter to her parents, stating she didn't know who to tell or what to do.

Plaintiff did not go to work Monday morning, stating she couldn't go to work. She was crying when Mrs. Fay Holloway, her mother-in-law, came in. She told her what had occurred, and, later that day, told her husband. Mrs. Holloway and plaintiff's husband corroborated plaintiff.

On Monday, May 7, plaintiff, her husband and mother-in-law, at the request of defendant and defendant's wife, were in defendant's office. While there plaintiff told defendant in the presence of his wife of the occurrences. Defendant's wife left. Then as plaintiff, her husband and mother-in-law were leaving, defendant, according to their testimony, stated ''he was sorry it all happened.'' Plaintiff's husband replied: ''Well, you should have thought of that before you tried anything''; and defendant answered: ''Yes, I should have.''

The foregoing is a sufficient statement, although there are other facts of record favorable to plaintiff's case.

The defense was that defendant worked the whole of the Thursday in question on a home he had under construction for his family and was not at his office; and that he never committed any assault of

any nature upon plaintiff at any time, including the Thursday and Saturday in question.

In Champagne v. Hamey (Div. II), 189 Mo. 709, 727, 728, 731, 88 S. W. 92, 97, 99, a suit for damages arising out of an alleged forcible rape (see § 559.260, RSMo 1949) and stressed by defendant, plaintiff had failed to make any complaint of the occurrence for about a year and the court reversed the judgment, being unwilling to approve a plaintiff's verdict in the circumstances. The other opinion cited by defendant, State v. Hamey (Div. II, 1901), 65 S. W. 946, involving the same facts as Champagne v. Hamey, supra, never became the opinion of the court as, upon transfer to Court en Banc, the conviction of said defendant under a charge of carnal knowledge of an unmarried female of previous chaste character between the ages of fourteen and eighteen (see § 559.300, Id.) was affirmed in State v. Hamey (1902), 168 Mo. 167, 67 S. W. 620. The instant case is not a case involving a rape or an assault with intent to rape. Plaintiff made complaint on the fourth day after the first occurrence. In the circumstances of the instant case plaintiff's failure to make outcry and failure to sooner complain only went to the weight to be accorded plaintiff's testimony by the jury. State v. Bigley, Mo., 247 S. W. 169, 171[4,5,7]; Linville v. Green, 125 Mo. App. 289, 301, 102 S. W. 67, 70; State v. Cobb, 359 Mo. 373, 221 S. W. 2d 745, 749[9]; State v. Dilts, 191 Mo. 665, 675(IV), 90 S. W. 782, 786; State v. Barnes, 325 Mo. 545, 29 S. W. 2d 156, 158[1].

To establish that on Thursday, April 26th, he was working on his new home and was not at his office, defendant produced and offered in evidence over plaintiff's objections a statement covering materials he had purchased from a lumber company in the month of April, 1951, which statement had been mailed to him the first of the month following. From the fact the statement disclosed among the numerous entries thereon that several doors had been purchased on April 26th for his home, defendant was positive in his testimony that he had worked on his new home and was not at his office that day. Gene Bibb, the manager of the lumber company, and Robert Tucker, a carpenter working on the house, corroborated defendant on this fact issue, but neither had any independent recollection of the date the doors were purchased. Each relied on the exhibit to establish the date.

Mr. Bibb testified that the lumber company made out its charge sales tickets in triplicate. A yellow copy is given the customer at the time of purchase. A pink copy is kept as a permanent record. A white copy is used by the bookkeeper to post the journal. The ledger is posted from the journal and is used for making out the monthly statements forwarded to customers at the end of the month. When payment is made, the white copy is delivered to the customer. The exhibit was the monthly statement forwarded to defendant. It

is in the handwriting of Mrs. Stull, the bookkeeper. She was not a witness and there is no showing she was unavailable.

The Uniform Business Records as Evidence Act broadens the common law on the admissibility in evidence of writings and records. Section 490.680, RSMo 1949, so far as material, provides: "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event **."

Plaintiff states that the original credit sales tickets, the journal and the ledger, all of which were in existence, would have been admissible upon a proper foundation being laid. The credit sales tickets are the original record of the acts, and the journal and ledger entries are records made in the regular course of the business at or near the time of the act and kept by the company to permanently reflect its transactions. Their trustworthiness is derived from their source and origin and permanency. The monthly statements of the accounts forwarded to the customers are copies of entries appearing in the ledger, in the nature of narratives of past events, and not the business records of the acts therein set forth. They constitute communications between the company and its customers, and were of transactions with which plaintiff had no connection or knowledge. The company's manager testified the sales tickets would have to establish the date. The exhibit was written hearsay. It should have been excluded. Further, there was no showing that it was a true copy. This conclusion finds support in the following cases. Palmer v. Hoffman, 318 U. S. 109, 114, 87 L. Ed. 645, 63 S. Ct. 477, 144 A. L. R. 719; Masterson v. Pennsylvania R. Co., 182 F. 2d 793, 796[3,4]; Amtorg Trading Corp. v. Higgins, 150 F. 2d 536, 539[7]; John Irving Shoe Co. v. Dugan, 93 F. 2d 711, 712[3,6]; Re Daniels' Estate, 185 Ore. 642, 205 P. 2d 167, 173[3]; Kliethermes Motor Co. v. Cole Motor Service, Inc., Mo. App., 102 S. W. 2d 819, 821[5,6]; Jungkind Photo Sup. Co. v. Yates, Mo. App., 257 S. W. 820, 821[2-4]; Miller v. Quincy, O. & K. C. R. Co., 205 Mo. App. 463, 473, 225 S. W. 116, 119[7].

Defendant's cases differ on the facts. The exhibits in Reinecke v. Mitchell, 54 N. M. 268, 221 P. 2d 563, 21 A. L. R. 2d 770, under Reinecke's evidence were carbon copies of the weight tickets delivered to defendant by plaintiff's truckers upon the delivery of loads of hay purchased by defendant from plaintiff, and after defendant, upon demand, failed to produce the originals. They were within "The Uniform Business Records as Evidence Law." The work sheets, showing the destination and starting point of certain trucks in Voyles v. Columbia Terminals Co., Mo. App., 239 S. W. 2d 559, 562[4], were also original records within said law. The

other Missouri cases stressed by defendant involved exhibits, as we read the cases, that were the original or permanent records of the respective parties. Adams v. Moberg, 356 Mo. 1175, 205 S. W. 2d 553, 557[2]; Steffen v. Southwestern Bell Tel. Co., 331 Mo. 574, 56 S. W. 2d 47, 48[4,5]; State v. Harris, 334 Mo. 38, 64 S. W. 2d 256, 258[6-9]. The contract involved in Peppas v. H. Ehrlich & Sons Manuf. Co., 228 Mo. App. 556, 71 S. W. 2d 821, 825[10], was not hearsay under the pleaded issues.

Plaintiff complains of defendant's instruction to the effect that if the jury believed that at the time of the alleged assault, or within a reasonable time thereafter, "the plaintiff had an opportunity to make an outcry, and that she did not do so, and did not as soon as an opportunity offered, and that she continued on friendly relations with the defendant after the date of said alleged assault, then the jury should take these circumstances into consideration in determining whether the defendant did in fact make an assault upon plaintiff by force and against her will."

Evidence that the victim did or did not make complaint, when not a part of the res gestae, is hearsay, but is admissible as an exception to the hearsay rule in prosecutions involving forcible rape on the theory that the natural instinct of a female thus outraged prompts her to make outcry and complaint at the earliest opportunity to someone who has an interest in her welfare. It is stated in 44 Am. Jur. 953, that the rule is likely "a perverted survival of the ancient requirement that in a rape case the injured woman should make hue and cry as a preliminary to bringing her appeal." The evidence of complaint is accepted only in corroboration of plaintiff as negativing consent, and evidence of failure to complain is of contrary signifiance. It does not constitute independent proof of the offense charged or independent proof that the offense was not committed. State v. Richardson, 349 Mo. 1103, 163 S. W. 2d 956, 960[6,7,12]; State v. Bowman, 278 Mo. 492, 213 S. W. 64, 65[2]; State v. Palmer, 344 Mo. 1063, 130 S. W. 2d 599, 600[4]; State v. Fleming, 354 Mo. 31, 188 S. W. 2d 12, 15[3].

Plaintiff says the clause "then the jury should take these circumstances into consideration in determining whether the defendant" committed an assault upon plaintiff singled out the facts mentioned in the instruction and gave them undue prominence and impliedly excluded other facts in evidence bearing on the issue. The instruction singled out particular facts in evidence which tended to discredit plaintiff but which were not determinative of the submitted ultimate fact. It thus gave these facts undue prominence. Spalding v. Robertson, 357 Mo. 37, 206 S. W. 2d 517, 522, 523[9,11]; Dawes v. Starrett, 336 Mo. 897, 82 S. W. 2d 43, 58[8]. We think instructions in forcible rape cases to the effect that the jury may take into

consideration the failure of the prosecutrix to complain should also state that all facts in evidence bearing on said issue are for the consideration of the jury, and thus embrace any testimony the jury might consider as tending to excuse or explain the victim's actions. The instant instruction did not do this. Champagne v. Hamey, 189 Mo. 709, 722, 88 S. W. 92, 95; State v. Palmer, 344 Mo. 1063, 130 S. W. 2d 599, 601; State v. Taylor, 320 Mo. 417, 8 S. W. 2d 29, 35[21]; State v. Bigley, Mo., 247 S. W. 169, 171[7,8]; State v. Richardson, 349 Mo. 1103, 163 S. W. 2d 956, 961[10].

Plaintiff also contends the instruction should not have been given in the instant case.

Proper instructions of a like nature receive approval in cases involving a rape wherein force is an element of the charge. Champagne v. Hamey, supra; State v. Thomas, 351 Mo. 804, 174 S. W. 2d 337, 345, cases relied on by defendant. But the refusal of the instruction is proper in statutory rape cases where neither force nor consent is a factor. State v. Bowman, 278 Mo. 492, 213 S. W. 64, 65[2]; State v. Richardson, 349 Mo. 1103, 163 S. W. 2d 956, 962[13]; State v. Cobb, 359 Mo. 373, 221 S. W. 2d 745, 750[13].

In directing the jury's attention to testimony bearing only on plaintiff's credibility and not determinative of the ultimate fact [660] issue, like instructions do single out testimony for comment. State v. Bowman, Spalding v. Robertson, and Dawes v. Starrett, all supra. They have a peculiar application in cases involving forcible rape for the same reason under which the testimony is admissible in such cases. We are cited to no case of a different nature, such as robbery by violence or assault, approving like instructions. Missouri courts have held, in civil actions for an assault with intent to rape, that the assault is the gist of the action and the intent goes only to the question of damages. Booher v. Trainer, 172 Mo. App. 376, 382, 157 S. W. 848, 850[5]; Lemmons v. Robertson, 164 Mo. App. 85, 89, 148 S. W. 189, 190[2]; Marts v. Powell, 176 Mo. App. 124, 126(I), 161 S. W. 871[1]. The claim in the instant case was for an assault. See Marts v. Powell, supra. We conclude the reasoning supporting the instruction in forcible rape cases is not present here, at least not to such a degree as to justify an instruction that singles out the testimony on whether plaintiff did or did not make outcry or prompt complaint for comment, and that the ends of justice in cases of this nature are served by presenting this evidentiary fact issue in argument to the jury.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.